**TSC INDUSTRIES, INC., a corporation, Plaintiff-Appellant,**

v.

**INTERNATIONAL HARVESTER COMPANY, a corporation, Defendant-Appellee.**

No. 16571.

United States Court of Appeals Seventh Circuit.

Dec. 5, 1968.

Rehearing En Banc Denied March 3, 1963.

Thomas E. Dorn, Wallace, Kinzer & Dorn, Theodore W. Anderson, Jr., Pendleton, Neuman, Seibold & Williams, Chicago, Ill., for plaintiff-appellant.

Howard W. Clement, Melvin F. Jager, Hume, Clement, Hume & Lee, Chicago, Ill., for defendant-appellee; Noel A. Artman, John J. Kowalik, Chicago, of counsel.

Before CASTLE, Chief Judge, DUFFY, Senior Circuit Judge and HASTINGS, Circuit Judge.

DUFFY, Senior Circuit Judge.

This suit was initiated as a declaratory judgment action stemming from defendant's charge that plaintiff was in-infringing Walker United States Patent No. 2,729,930 by reconstructing and selling spent doffers.

A mechanized cotton picking machine is large in size and is of considerable complexity. It contains, among other parts, a combination of rotating, elongated picking spindles which remove and collect the cotton from the cotton plants as the cotton picker moves along a row of plants, and disc-like rotating doffers which cooperate with the spindles to remove the picked cotton therefrom. This combination constitutes the "heart" of the machine.

Only two companies make rotary doffer cotton picking machines in the Unit-

ed States. Those are the defendant and John Deere Company. From 1958 to 1966, these two companies sold most of the 23,000 cotton picking machines which were sold in this country.

As the cotton picker moves down a row of cotton plants, the spindles are moved in a path around a drum. Each spindle projects successively out of the picker housing and contacts the cotton plants. As the picker moves forwardly, the spindles move rearwardly. Each spindle is rapidly rotated on its own axis. When a spindle contacts the cotton boll of the plant, the cotton is wound on the spindle and thus removed from the plant.

Each cotton-laden spindle is then moved in close association with a rotating doffer. Each doffer has a number of depending lugs. The doffers are rotated in the direction of the rotation of the spindles but at a higher speed so that the lugs sweep successively across the spindles in an unwinding action. The loose cotton is carried by a stream of air through passageways into a storage basket at the top of the picking machine. The spindle and doffer assemblies are in vertical stacked rows so as to operate on the entire cotton plant.

Since the inception of the mechanized cotton picker using a combination of picking spindles and doffers, there always has been the disadvantage that the lugs or other comparable elements on the doffers rapidly become worn, after which they do not operate efficiently. This problem plagued the industry for years. Many unsuccessful efforts were made to supply the trade with a doffer which would give service for an entire picking season.

The many attempts to solve the wear problem is shown by a number of patents in this field which were filed in the period from 1937 on. Most of these patents disclosed doffers having a circular row of lugs projecting downwardly. In some, the discs are solid, and the doffing lugs are completely backed by metal. These were referred to at the trial as "solid back" doffers. The defendant and others used this type of doffer prior to the invention of Walker's '930 doffer.

The problem persisted of providing an effective doffer with a useful life extending as long as a one-picking season. It was with this background that Mr. Walker, product engineer on cotton pickers at defendant's Memphis plant, conceived the doffer construction as shown in the '930 patent. This patent describes a doffer construction having a lug with "axial movement relative to the support structure." The preferred embodiment is one "where the outer ends of the doffing pads or lugs are free-floating and the inner ends are somewhat more restricted in their action." An alternative embodiment is one in which the lugs are "supported and isolated from the rigid structure of the supporting disc."

The evidence discloses that defendant's '930 doffer construction clearly prolonged the useful life of doffers to about four hundred hours of operation. This was substantially one full season of use.

Mr. Walker later conceived another type of doffer having the same form of plate member but having the lugs supported principally by the relatively rigid fingers of the plate. This was the subject matter of Walker's No. 2,700,266 patent issued on January 25, 1955.

The District Court tried the issue of infringement first. The critical question before us, as to the alleged infringement, is whether plaintiff merely repaired worn doffers or whether it was engaged in infringing reconstruction of the doffers which were originally manufactured and sold by defendant.

There were cross motions for summary judgment. Both parties seemed to agree that the undisputed activities of plaintiff amounted either to permissible repair or infringing reconstruction and that this issue was an appropriate one to submit to the Court on a summary judgment basis.

The original construction of the Dofflex doffers is accomplished by first ap-

plying a rubber-to-metal bonding cement to a new metallic carrier plate which has spaced, peripheral fingers. Thereafter, the carrier plate is placed in the cavity of a molding apparatus, an annulus of rubber is placed on the fingers of the plate, and the mold cavity is closed. The high pressure and heat of the molding apparatus forms the annulus of the rubber into the lugs and the wafter-like web of the doffer assembly, including the resilient lug sustaining portions, and bonds the web to the fingers of the metallic carrier plate. The metallic carrier plate is initially positioned in the molding apparatus so that the doffer lugs so formed are positioned between the spaced fingers of the metallic plate.

The process of manufacturing a new '930 doffer as done by the defendant, and plaintiff's process of reconstructing or repairing a worn '930 doffer from a reclaimed metallic carrier, are identical. Plaintiff does not take the worn doffer to be repaired and thereafter return it to the original owner. Plaintiff purchases worn-out '930 doffer assemblies for a nominal sum. After reclaiming the plate from the doffer assembly, plaintiff carries out additional steps which are identical with those performed by the defendant and which have been hereinbefore described. Plaintiff claims that what it has done is a "rerubbering" process and that it is a permissible repair and therefore, not an infringement.

After accumulating a substantial number of defendant's worn and spent doffers, plaintiff follows the practice of initiating its "re-rubbering" program. Plaintiff destroys what is left of the patented doffer combination by removing the molded rubber lugs and the wafer-like web including the resilient lug sustaining portions of the web, spanning the space between the fingers of the carrier plate. It is possible to reuse the metal plate a number of times.

The trial court found that plaintiff first destroyed the patented doffer combination and then reconstructed a new combination using a process practically identical with that described in defend-

ant's patent No. '930, and as used in the original manufacturing process. The trial court concluded that plaintiff's conduct was not a permissive repair but was, in fact, an infringing reconstruction.

Both parties cite and discuss at some length the opinion of the Supreme Court in Aro Manufacturing Company v. Convertible Top Replacement Company, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). It is not surprising that the position of the Court in that case is subject to varying interpretations. There, we have first, the opinion of the Court followed by a lengthy concurring opinion which, in turn, is followed by an opinion "concurring in the result." This is followed by a dissenting opinion representing the views of three Justices.

In *Aro*, the Court's opinion stated, page 344, 81 S.Ct. page 604: "For if anything is settled in the patent law it is that a combination covers only the totality of the elements in the claim and that no element separately viewed is within the grant."

On page 345 of the Court's opinion, 81 S.Ct. on page 604 it is stated: "No element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be." The Court also pointed out at page 345, 81 S.Ct. at page 604, that previous decisions of the Court have held that a license to use a patented combination includes the right "to preserve its fitness for use so far as it may be affected by wear or breakage."

Justice Black, in his concurring opinion, emphasized the same point, page 358, 81 S.Ct. page 611: "It has long been settled with respect to combination patents that the monopoly rights extend only to the patented combination as a whole and that the public is free to appropriate any unpatented part of it, 'however important.'" He further stated: "A case in which only a minimal component has been omitted from a

'making' of the combination, such as the extreme example of omission of a single bolt from a patented machine or a button from a patented garment might call upon this Court to articulate some rather obvious refinements to this simple test of 'making.'" However, he thought that *Aro* presented no such difficulty.

In *Aro*, supra, Patent No. 2,569,724 covered a combination, in an automobile body, of a flexible top fabric, supporting structures, and a mechanism for sealing the fabric against the side of the automobile body to keep out the rain. Tops embodying the patent had been installed by several automobile manufacturers on various models of convertibles. The components of the patented combination, other than the fabric, normally were useable for the lifetime of the car, but the fabric deteriorated in appearance so as to become "spent" and normally was replaced after three years in use.

*Aro* manufactured and sold replacement fabrics designed to fit convertible automobiles equipped with tops embodying the construction covered by the patent in that suit. The District Court and the Court of Appeals held such replacements were infringing reconstruction of the combination covered by the patent. The Supreme Court reversed.

The opinion of the Supreme Court stated (365 U.S. p. 342, 81 S.Ct. p. 602): "This Court's decisions specifically dealing with whether the replacement of an unpatented part, in a patented combination, that has worn out, been broken or otherwise spent, is permissible 'repair' or infringing 'reconstruction,' have steadfastly refused to extend the patent monopoly beyond the terms of the grant." The Court cited Wilson v. Simpson, 9 How. 109, 13 L.Ed. 66, where a patent covered a planing machine which included, as elements, certain cutting knives which normally wore out after a few months' use. The purchaser was held to have the right to replace these knives without the patentee's consent.

In his concurring opinion in *Aro*, Justice Black states (365 U.S. 336, 350, 81 S.Ct. 599, 607): "Common sense and prior decisions of this Court require us to hold that an automobile owner does not 'make' a whole top when he merely replaces its worn-out fabric cover."

The holding of the Court in *Aro* is explained by Justice Harlan in his dissenting opinion. He said (365 U.S. p. 370, 81 S.Ct. p. 617): "In reversing, the Court holds there can be no direct infringement (and hence, of course, no contributory infringement) of a combination patent by replacement of any of the components of the patented entity unless 1) such component is itself separately patented, or 2) the *entire* entity is rebuilt at one time."

The early decision of the Supreme Court in Cotton-Tie Company v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79 (1882), does give some support to arguments of the defendant, but insofar as the decision in *Cotton-Tie* is inconsistent with the later decision in *Aro Manufacturing Co.*, it must be regarded as having been overruled.

A patent case with many similarities to the case at bar is Micromatic Hone Corporation v. Mid-West Abrasive Company, 6 Cir., 177 F.2d 934. The patent there involved was for a holder for abrasive stones. These honing stones were manufactured from small particles of abrasive grit which were mounted in heat and pressed to the desired shape. The stone was then secured by an adhesive cement to a sheet-metal channel. The stones were not patented. Normally, the stones would wear out after six hours' use, but the holders would wear much longer.

The Court stated in Micromatic Hone Corporation v. Mid-West Abrasive Company, supra, at page 936: "It has long been the established rule that if one of the parts of a patented combination, the part not being patentable per se, is made of soft material and wears out, the other parts of the combination remaining capable of performing their normal and expected functions, the right to replace the worn-out part exists quite as definitely as in the case of breakage."

In view of the Supreme Court's decision in *Aro*, we find no alternative except to hold that the plaintiff's so-called infringing reconstruction of the doffer was, in fact, a permissible repair, and the decision of the District Court herein must, in that respect, be reversed.

In a separate trial, the District Court held the '930 patent was valid. We agree with the Court that the claims in the '930 patent were not obvious. Many had worked for years to solve the problem, but it was not accomplished until the device of the '930 patent was discovered by Mr. Walker.

We further approve of the finding of the District Court that the prior art did not contain the combination of features defined in the '930 patent specifications and claims.

We hold the presumption of validity is strengthened where the prior art relied on by the accused infringer is the same as, or no better than, that considered and rejected by the Patent office as was done in the case at bar. National Dairy Products Corporation v. Borden Co., 7 Cir., 394 F.2d 887 (1968); Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 298 F.2d 765.

Plaintiff also argued that the patent in suit was invalid because of double patenting. We agree with the District Court in rejecting this defense. It is well established that a defense of double patenting carries with it a heavy burden of proof and that all reasonable doubts must be resolved in favor of the validity of the challenged patent. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983.

We have considered other claims made by the plaintiff in arguing that the patent in suit is invalid, but we reject such claims and do not feel it necessary that any further detailed discussion in reference thereto be had.

The decision of the District Court as to the validity of the patent is affirmed. The decision of that Court as to infringement is reversed.

Affirmed in part, reversed in part.