**ELLIPSE CORPORATION, Plaintiff-Appellee, Cross-Appellant,**

v.

**FORD MOTOR COMPANY, Defendant-Appellant, Cross-Appellee.**

**Nos. 18427, 18428.**

United States Court of Appeals, Seventh Circuit.

Sept. 29, 1971.

Rehearing Denied Dec. 13, 1971.

Norman Lettvin, Chicago, Ill., for Ellipse Corp.; George H. Gerstman, Chicago, Ill., of counsel.

Carlton Hill, Chicago, Ill., amicus curiae.

J. Arthur Gross, James Van Santen, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., Lloyd M. Forster, Farley, Forster & Farley, Detroit, Mich., for TRW Inc.; Eugene E. Ford, Joseph T. Gorman, Kenneth G. Preston, Jr., Law Department, TRW Inc., Cleveland, Ohio, of counsel.

George N. Hibben, Chicago, Ill., Arlie O. Boswell, Jr., Hibben, Noyes & Bicknell, Chicago, Ill., for Ford Motor Co.; Donald J. Harrington, Office of the General Counsel, Ford Motor Co., Dearborn, Mich., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KILEY, Circuit Judge.

Ford Motor Company (Ford) has appealed from a district court judgment[1]

1. 312 F.Supp. 646 (N.D.Ill.1969).

that claims 3 and 1 of Ellipse Corporation's (Ellipse) Rhine patent [2] No. 2,628,-568 were valid and had been infringed by Ford's accused power steering pumps. We affirm in part and reverse in part.

Ellipse is an Illinois corporation formed in 1945 to develop and promote the pumps of Marvin Rhine, who subsequently filed application for the patent in suit here. Two years after incorporation Ellipse terminated regular operations. However, it continued to prosecute the Rhine patent application and to solicit the interest of other companies in its pumps.

The patent application was granted in February, 1953, and in 1956 Ford purchased two pumps from Ellipse. In 1962 Ellipse, in a letter, charged Ford with infringement. Ford declined an offer of license and denied any infringement. The accused devices are the balanced power steering slipper pumps which Ford began using in all of its 1965 automobiles except the Lincoln. On August 2, 1966, Ellipse filed its original complaint charging Ford with infringement of two "forms" [3] of its slipper pumps. Ellipse's subsequent amended complaint charged infringement only against one "form" of pump, the power steering pump. Ford defended on customary grounds of invalidity and non-infringement.

The Rhine patent discloses a rotary pump consisting of a series of stacked circular rotor units driven by a shaft. This assembly is enclosed by a casing referred to as the stator. Each rotor has a series of rounded pockets carved around its periphery. In each pocket is a slipper or blade of similar shape to the pocket. The slipper is permitted to move freely within the pocket. Figure (2) of the patent application shows that the stator departs from the rotor on opposite sides, forming a crescent shaped chamber in each space created. Each chamber has an inlet and an outlet passage through the stator wall, and 90° apart from each other.

As the rotor turns, centrifugal force joins with fluid pressure behind the slippers to push the slippers radially outward against the inner stator wall. When the slippers move through the crescent shaped chambers, they tend to move somewhat in and out of the pockets, since they always remain firmly pressed against the stator wall. This in-and-out movement draws fluid in through the inlet passage and forces it out through the outlet passage of each chamber.

I.

*SCOPE OF THE INVENTION*

The central issue concerns the meaning and scope of claim 3 [4] of the patent which calls for, *inter alia*, A) an "out-of-round stator cavity," and B) "area contact" between the outer surface of the slippers

**2.** Rhine United States Patent No. 2,628,-568, entitled "High Pressure Pump" and issued on February 17, 1953 on an application filed April 26, 1946. The patent was subsequently assigned to Ellipse.

**3.** Ellipse's original complaint did not specifically charge infringement against both Ford's transmission and power steering pumps. However, by charging infringement against "two forms," the implication was clear that infringement was being charged against both Ford pumps.

**4.** Claim 3 of the Rhine patent application reads as follows:
 3. A rotary fluid displacement device comprising a stator having an *out-of-round stator cavity*, a rotor located therein, said rotor having blade-receiving pockets, a blade received in each of

said pockets, each of said blades having contact at all times during operation with said stator and said rotor, in which the contact between the outer surface of the blade and the inner surface of the stator is *area contact* to prevent complete rotation of the blade in the pocket but permit it to rock therein with free movement in relation to said pocket, and the contact of a side of the blade with the rotor pocket being along a line which varies in position with respect to the blade and the pocket during operation and which acts as a pivot for the blade, the pivot action tending to keep the outer surface of the blade in said *area contact with said stator during all positions of rotation of said rotor*. (Emphasis added.)

and the inner wall of the stator for all positions of rotation.

Ellipse contends that the language of the patent discloses *only* a "balanced" slipper pump with a "mismatching area contact" beween the slippers and the stator. In a "balanced" pump the stator departs from the rotor at opposite ends to provide two diametrically opposed crescent shaped pumping chambers, each with its own inlet and outlet. This is in contrast to an "unbalanced" pump where the stator and the rotor are eccentrically positioned so that there is only one pumping chamber. "Mismatching area contact" between two arcuate surfaces is to be distinguished from and lies somewhere between a line contact—as in a roller pump—and a perfect surface-to-surface contact, where the curvature of the outer surface of the slipper is the same as the curvature of the inner surface of the stator.

This purported "mismatching contact" is the inventive feature of the pump and distinguishes it from the prior art. The mismatching creates a very thin film of oil between the slippers and the stator wall for all positions of rotation; it reduces the friction between the sliding surfaces, adds to the working life of the pump and also increases the pump's efficiency.

Ford asserts error in the district court findings that 1) "area contact" meant "mismatching area contact," and 2) that "out-of round" was limited to an "elliptical or equivalent" stator cavity. Specifically Ford contends that the language of claim 3 calls for total surface-to-surface contact (*i. e.*, no mismatch) because "area contact" denoted only total surface contact in the prior art. Ford also argues that by amending the claim to call for an "out-of-round" stator cavity, Rhine abandoned his original limitation that the stator cavity be elliptical in shape. Since only an elliptically shaped stator would compel a "mismatching contact" between the slippers and the stator for all positions of rotation, Ford contends that file wrapper estoppel applies and precludes Ellipse from asserting that

the patent application disclosed *only* a "mismatching area contact."

The general rules for determining the scope and meaning of patent claims are well settled. Claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention. United States v. Adams, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1965). Proceedings before the Patent Office should be considered in determining the scope of the claims. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1970). A patentee can choose his own terms and use them as he wishes so long as he remains consistent in their use and makes their meaning reasonably clear. Universal Oil Products Co. v. Globe Oil and Refining Co., 137 F.2d 3, 6 (7th Cir. 1943), affirmed 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944); Dennis v. Pitner, 106 F.2d 142, 148 (7th Cir. 1939).

### A.

Applying these principles, we agree with Ellipse that there is nothing in the specifications which would indicate that anything but a balanced pump was disclosed. Figure (2) of the specifications clearly shows a balanced pump. The specifications state that one object of the pump is to "effect intake of fluid at opposite points" thus indicating the presence of two opposite pumping chambers which results in a balanced pump.

The term "out-of-round" used to describe the Rhine pump stator wall does not appear in the specifications. "Elliptical" is the only term used there to define the shape of the stator, and it is employed there three times. An examination of the file wrapper shows that all of the original patent claims except original claim 3 used the term "elliptical" to describe the stator. The term "out-of-round" was later substituted for "elliptical" but we do not think—as Ford argues—that the patentee thereby abandoned the limitation of an "elliptical or equivalent" stator cavity.

■ The doctrine of file wrapper estoppel is that an applicant who acquiesces in rejection of his patent claim and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand (or narrow) his claim by interpretation to include limitations originally given up, or their equivalents. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Ekco Products Co. v. Chicago Metallic Manufacturing Co., 347 F.2d 453, 454–55 (7th Cir. 1965). A necessary condition for the establishment of a file wrapper estoppel is that the patentee must have narrowed (or broadened) his claim in response to an objection by the Patent Office in order to obtain the patent. Bishman Manufacturing Co. v. Stewart-Warner Corp., 380 F.2d 336, 340 (7th Cir. 1967), cert. denied 389 U.S. 897, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967). The application of the doctrine is limited to changes made to overcome rejections by the Patent Office because the claim was anticipated by the prior art, Eimco Corp. v. Peterson Filters and Engineering Co., 406 F.2d 431, 438 (10th Cir. 1968), cert. denied 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749. It will not apply where changes in the claim are directed to merely overcoming difficulties in particular wording or indefiniteness, Eimco, supra; Sears, Roebuck & Co. v. Jones, 308 F.2d 705, 708–709 (10th Cir. 1962), cert. denied 371 U.S. 952, 83 S.Ct. 509, 9 L.Ed.2d 501 (1963), or adhering to the most descriptive recitation of his (patentee's) structure. *Bishman,* 380 F.2d at 340.

■ There is nothing in the file wrapper to estop Ellipse from limiting claim 3 to an "elliptical or equivalent" stator cavity. Claim 3 was originally rejected because of the location of the inlet and outlet passages. The Patent Office made no direct reference to the elliptical shape of the stator, and the substitution by Rhine of "out-of-round" for "elliptical" was not directed to overcoming any prior art limitations on the shape of the stator cavity. Rhine's correspondence with the Patent Office shows that the change in the wording of claim 3 was for the purpose of making it clear that he was not purporting to be the inventor of an elliptical stator cavity. There is no file wrapper estoppel where the change in the wording was to clarify that the stator cavity of the Rhine pump could merely be something more than a mathematically perfect ellipse.

In the file wrapper Rhine refers to the limitation in the original claim that the stator be "elliptical," as being only "somewhat broadened" by the added term "out-of-round." That reservation when considered in light of Rhine's apparent purpose in substituting "out-of-round" sufficiently qualifies the scope of other comments in the file wrapper and limits the scope of "out-of-round" to an "elliptical or equivalent" stator cavity, as found by the district court. The failure to strike "elliptical" from the specifications is one more indication that the applicant intended that term or its equivalent to define the shape of the stator cavity. The district court did not err in construing the scope of the amendment to be an "elliptical or equivalent" stator cavity.

### B.

■ The term "area contact" is not specifically defined in the patent application, nor is it limited to a single meaning in the art. The testimony and documentary evidence show the term was used ambiguously in the prior art to mean surface-to-surface contact and also less than surface-to-surface. However, in proceedings before the Patent Office Rhine describes the outer face of the slipper as *"approximately* the same as the inner surface of the stator" (emphasis added), thus indicating a relationship between the two surfaces which is something less than total surface contact at all points. Furthermore, as the district court correctly found, a "mismatching area contact" for all positions of rotation is inherent in the geometric features of the rotor and the stator in the pump. Given an elliptical or equivalent stator

cavity with a constantly changing radius of curvature, and a slipper with a constantly unchanging radius of curvature, the resulting contact between the slipper and the stator must be less than perfect and thus "mismatching" for all positions of rotation.

We conclude that the term "area contact" in claim 3 reasonably and plainly called for a "mismatching area contact" for all positions of rotation. The "mismatch" was disclosed in the patentee's use of the term before the Patent Office, and necessarily resulted from the respective geometric shapes of the inner stator wall and outer face of the slippers.

 Ford also contends that claim 3 fails to require a "mismatching contact" because of Ellipse's "admissions" with respect to the patent whereby Ellipse purportedly interpreted "out-of-round" as covering circular and non-circular stator cavities. As examples of the "admissions" Ford cites Ellipse's 1962 letter charging infringement against Ford's unbalanced pumps, and Ellipse's 1966 original complaint charging infringement against Ford's unbalanced transmission pumps. We are not persuaded that any of these or related arguments should change the result we have reached above. *See* W. F. & John Barnes Co. v. International Harvester Co., 51 F.Supp. 254, 262 (N.D.Ill.1943); McCormick, Handbook of the Law of Evidence, Ch. 27 at 510 (1954).

A patentee's own interpretation under a patent may be some evidence of the scope of a claim, Union Carbide & Carbon Corp. v. Graver, 196 F.2d 103, 109 (7th Cir. 1952), but the meaning which the inventor gives to his words cannot be made to depend upon subsequent events. It must appear when the application is filed. Universal Oil Products Co. v. Globe Oil & Refining Co., 137 F.2d 3, 6 (7th Cir. 1943). A patentee's interpretation under a patent may never be used to add to a patent something which was not there at the time of issuance. Ellipse's alleged "admissions" under the

patent do not compel a result different from that which we have reached.

II.

*VALIDITY*

 Ford contends that claim 3 of the Rhine patent is invalid by reason of anticipation (35 U.S.C. § 102), obviousness (35 U.S.C. § 103), and indefiniteness (35 U.S.C. § 112). We think the district court did not err by concluding that claim 3 of the patent was valid.

Claim 3 contains several features which distinguish it from the prior art. The claim requires a balanced slipper pump with "mismatching area contact" between the slippers and the stator. In contrast, the Blackmer DC 20 pump discloses an unbalanced slipper pump where there is surface-to-surface contact between the slippers and the circular stator wall. The Livermore '927 pump [5] is also an unbalanced pump with a noncircular stator of various connecting circular arcs and in which the slipper has total surface contact with the working arc of the pumping chamber in the stator. Neither of these pumps is "balanced," nor do they provide for "mismatching area contact" between the slippers and the stator for all positions of rotation. There is no anticipation of claim 3 of the Rhine patent.

 Nor can we say that the Rhine invention was obvious to one of ordinary skill in the art at the time Rhine disclosed his patent application. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965); United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1965). There is ample evidence in the record to show the scope and content of the prior art, and the differences between the prior art and the claims at issue. That evidence also shows the existence of factors presenting obstacles to the Rhine discovery. The belief of others experienced in the art, that surface to surface contact was necessary in such pumps, discouraged the use of "elliptical or equivalent"

5. U. S. Patent No. 2,599,927 filed Oct. 6, 1944.

stator cavities in slipper pumps, which in turn dissuaded the discovery of mismatching area contact in such pumps. The failure of other experts working on slipper pumps to make or develop a balanced slipper pump until ten years after the Rhine, discovery is further evidence of the non-obviousness of· the Rhine. disclosure. National Dairy Products Corp. v. Borden Co., 394 F.2d 887, 890 (7th Cir. 1968), cert. denied 393 U.S. 953, 89 S.Ct. 378, 21 L.Ed.2d 364 (1968). And the fact that the solution to a problem is simple or appears so when viewed in retrospect does not mean the solution was obvious when it was conceived.

 35 U.S.C. § 112 requires that in order to be valid, patent claims particularly point out and distinctly claim the subject matter which the applicant regards as his invention. Ambiguous, indefinite and vague patent claims are void. The purposes for the precision requirements are to warn others skilled in the art against infringement, and to enable them to benefit from the teachings of the patent. Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227, 1241 (7th Cir. 1969); Pambello v. Hamilton Cosco, Inc., 377 F.2d 445, 447 (7th Cir. 1967).

 Ford argues that if Rhine claimed as his invention a "balanced," "slipper" pump, with "mismatching contact" between the slipper and the "elliptical or equivalent" stator, then he should have described his invention using those exact terms. However, Section 112 is satisfied where the patentee reasonably discloses the subject matter of the invention in terms which are reasonably clear and consistent. The patentee is his own lexicographer. Universal Oil Products Co. v. Globe Oil and Refining Co., *supra.* Since the terms "area contact" and "out-of-round" stator, when considered in light of the specifications and figures,

reasonably disclosed a "mismatching area contact" (*supra* Part I), the requirements of Section 112 were satisfied.

"Slippers," "elliptical shaped stators," "balanced pumps" were all elements known in the prior art. It is not enough for Ford to argue that figure (7) of the patent application does not sufficiently disclose the special nature of the contact between the slippers and the stator. These various components comprising the Rhine pump were known in the prior art, and a person skilled in the art and construing figure (7) in light of the claims and the specifications should have known that the Rhine combination disclosed a "mismatching area contact" since that was the pump's patentable distinction over the prior art. And the specifications state that the "invention consists in the construction, arrangement and combination of the various parts of the pump. * * *" The respective shapes of the contacting surfaces of the stator and the slippers compelled this "mismatching" relationship for all positions of rotation. The special nature of the relationship between the slippers and the stator is further evidenced in claim 3 by the patentee's repetitive emphasis on the "contact" between those two surfaces.

 For the reasons stated above, and in view of the presumption of validity that attaches to every issued patent,[6] 35 U.S.C. § 282, Devex Corp. v. General Motors Corp., 321 F.2d 234, 239 (7th Cir. 1963), cert. denied 375 U.S. 971, 84 S.Ct. 490, 11 L.Ed.2d 418 (1964); Copease Mfg. Co. v. American Photocopy Equipment Co., 298 F.2d 772 (7th Cir. 1961), we cannot say that the district court committed error in deciding that claim 3 and figure (7) of the Rhine patent application satisfied the definiteness requirements of Section 112.

---

6. Neither the Livermore '131 and '927 pumps, nor the Blackmer DC 20 pump were cited in the file wrapper. However, the presumption of validity of a patent is strengthened where—as in this case— the prior art relied upon by Ford is the same as or no better than that considered by the Patent Office in issuing the Rhine patent. TSC Industries, Inc. v. International Harvester Co., 406 F.2d 53, 57 (7th Cir. 1968).

## III.

### INFRINGEMENT

The operation of the Ford power steering pump is similar to that disclosed in the Rhine patent. Both pumps have the basic components in common.

The Ford device is a balanced slipper pump comprising a stator (casing) which encloses a series of circular rotors driven by a shaft. The stator of the Ford pump is neither truly circular nor truly elliptical. It consists of two sets of four connecting circular arcs of different radii of curvature. The inner stator wall departs from the rotors on opposite sides to provide two crescent shaped chambers facing each other. Each chamber has an inlet and an outlet passage diametrically opposed to its twin in the other chamber.

It is true that the Ford pockets are rectangular and house freely moving slippers (blades) mounted on a spring which force the slippers radially outward. Also, the outer face of the Ford slipper consists of two lobes of the same radius of curvature but different from those of the four connecting arcs of the stator. However, since the face of each slipper is shaped differently from those of the connecting arcs of the stator, there is always a "mismatch" (less than total surface contact) between the face of the slippers and the inner stator wall during all positions.

We find no error in the district court's finding that the Ford pump encompassed all the features of claim 3, since it is admittedly a balanced pump with mismatching area contact. This is especially true in light of the Ford expert's admission that if "area contact" in the claim referred to a "mismatch," then claim 3 would read on Ford's pump.

Infringement exists if the accused device is the structural equivalent of the device described in a patent, and performs substantially the same function, in substantially the same way, to achieve the same results, even though it differs in form or shape. Reese and Reese Products, Inc. v. Elkhart Welding & Boiler Works, Inc., 447 F.2d 517 (7th Cir. 1971); Union Paper-Bag Mach. Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1878). We conclude that the district court did not err in determining that Ford's pump infringed claim 3 of the Rhine patent.

However, as to claim 1 we think the district court's determination of infringement was erroneous. Claim 1[7] of the Rhine patent calls for the slippers or blades to be "substantially a half circle" in cross-sectional shape, and the pockets to have a "similar shaped bottom * * being substantially the same size as said blades (slippers) to effect substantially complete displacement of fluid from said pockets."

The Ford device omits a material element of that claim in that the pockets in the Ford pump are of rectangular shape and house slippers with rounded bottoms. There is thus no "similar shape" between the back of the slippers and the inside of the pockets as called for in claim 1. Moreover, this dissimilarity in shape between the rounded slipper bottoms and the rectangular pockets affects the amount of fluid displaced by the slippers in their most retracted position. Furthermore, the relationship between the slippers and the pockets in the Ford power steering pump so closely adheres to the prior art Blackmer and Curtis pumps that there is no infringement here of the Rhine patent. Where defendant proves "that its devices

7. Claim 1 of the Rhine patent reads as follows:

1. A fluid displacement device comprising a stator having an out-of-round stator cavity, a rotor rotatable therein, said rotor having blade-receiving pockets, blades received therein for free movement relative to the pockets and radial movement relative to the stator cavity in order to contact the wall thereof, each of said blades being substantially a half-circle in cross-sectional shape, each of said pockets having a similar shaped bottom, said pockets being of substantially the same size as said blades to effect substantially complete displacement of fluid from said pockets in the seated positions of said blades.

are built wholly according to the teaching of the prior art and that everything necessary to their conception and construction was taught by such art * * such proof clearly negatives infringement." Casco Products Corp. v. Sinko Tool & Mfg. Co., 116 F.2d 119, 121 (7th Cir. 1940).

### IV.

■ Finally, Ford appeals the award of attorney fees to Ellipse on the power steering pump issue. An award of reasonable attorney fees to the "prevailing party" in "exceptional cases" is allowed under 35 U.S.C. § 285. We agree with Ford that this is not an "exceptional case" within the meaning of Section 285. The award should not be granted except to prevent gross injustice or fraud, Sanford Research Co. v. Eberhard Faber, 379 F.2d 512, 516 (7th Cir. 1967), and we fail to find either present here, where the issues fairly presented have been difficult of solution. The award of attorney fees to Ellipse is manifest error and should be vacated.

■ We affirm, however, the award of attorney fees to Ford representing the added costs borne by Ford because of the prosecution under the original complaint, until abandoned at the beginning of the trial. Until the abandonment Ford was necessarily put to defending the charge that its transmission pumps infringed the Rhine patent. We think the district court could properly award it attorney fees under Section 285 as a "prevailing party." A proper construction of "prevailing party" applies in the award to Ford under Section 285 because Ford effectually prevailed as to the charge with respect to the transmission pump. Moreover, the award is valid under F.R.C.P. 41(a) (2).

### V.

Other incidental issues have been separately presented by both parties in this appeal. After a consideration of them we think that they have been adequately treated in our discussion above, and do not affect the dispositions we have made.

We hold that the court did not err in concluding that claim 3 of the Rhine patent was valid and infringed by the accused device. However, as to claim 1 we reverse the district court determination of infringement.

Affirmed in part, reversed in part.