DANA CORPORATION,
Plaintiff/Appellant,

v.

AMERICAN PRECISION COMPANY,
INC. and Illinois Auto Truck Co.,
Inc., Defendants/Appellees.

No. 87–1095.

United States Court of Appeals,
Federal Circuit.

Aug. 28, 1987.

John D. Briggs, Howrey & Simon, Washington, D.C., argued for plaintiff/appellant. With him on brief, were Scott E. Flick, William E. Wallace, III, Joseph P. Lavelle and Keith L. Seat. Also on brief, were Martin J. Strobel, Michael L. DeBacker and Robert M. Leonardi, Dana Corp., Toledo, Ohio, of counsel.

Barry Grossman, Banner, Birch, McKie & Beckett, Washington, D.C., and James B. Muskal, Leydig, Voit & Mayer, Ltd., Chicago, Ill., argued for defendants/appellees. Also on brief, were Harold J. Birch, Banner, Birch, McKie & Beckett, Washington, D.C., and Paul T. Fox, Holleb & Coff, Ltd., Chicago, Ill.

Richard A. Mehler, Mehler, Frantz, Conlon, Knapp, Phelan & Varnum, Washington, D.C., argued for amicus curiae Automotive Parts Rebuilders Assn.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and SMITH, Circuit Judge.

MARKEY, Chief Judge.

Dana Corporation (Dana) appeals from an order of the United States District Court for the Northern District of Illinois (Holderman, J.) granting summary judgment to American Precision Company, Inc. (APC) and Illinois Auto Truck Co., Inc. (IAT).[1] 618 F.Supp. 288 (N.D.Ill.1985). We affirm.

### Background

Familiarity with the district court's opinion being presumed, it is necessary here to state only those background facts necessary to the disposition of this appeal.

On October 8, 1982, Dana sued: (a) APC and IAT (APC/IAT) for contributory infringement of U.S. Patent Nos. 3,394,788 ('788 patent), 3,752,286 ('286 patent), and 4,034,836 ('836 patent); (b) IAT for direct infringement of U.S. Patent No. 4,254,855 ('855 patent); (c) Century Clutch and Brake Supply, Inc., Century Parts, Inc. (Century), and Surge Friction Products for direct infringement of all four patents; (d) APC and Century for unfair competition; and (e) Century for trademark infringement and for trade practices deceptive under state law. APC/IAT answered and filed various counterclaims. In 1983, Dana settled with Surge Friction Products.

Because Dana's claim is that APC/IAT are contributory infringers under 35 U.S.C. § 271(c),[2] Dana must first have established that Century is a direct infringer. *See Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 602, 5 L.Ed.2d 592, 128 USPQ 354, 357 (1961) (*Aro I*).

Dana's patents relate to certain types of heavy-duty truck clutches. The claims of the '788 patent, entitled "Spring Loaded Clutch", are drawn to Dana's Angle Spring clutch, now standard equipment on many heavy-duty trucks in the United States. The claims of the '286 and '836 patents are drawn to improvements in the Angle Spring clutch and in other Dana clutches.

APC/IAT and Dana distribute new unpatented clutch parts to "production rebuilders" (including Century) and to "repair & return rebuilders." Both types of rebuilders "rebuild" all major brands of truck clutches, including Dana's Angle Spring clutch.

As the district court explained, "repair & return" or "custom" rebuilders disassemble a particular worn clutch, locate defec-

---

1. Automotive Parts Rebuilders Association filed a brief as *amicus curiae.*

2. 35 U.S.C. § 271(c) reads:
   Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use *in an infringement of such patent,* and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. [Emphasis added.]

tive parts and replace them with new or salvaged parts, clean the useable parts, and then reassemble that clutch, using as many of its original parts as are still serviceable. 618 F.Supp. at 291. "Production rebuilders" acquire, primarily as trade-ins for rebuilt clutches, a number of worn clutches called cores. Production rebuilders disassemble the cores, clean and sort individual parts, salvaging those that can be reused and placing them in bins. Then, using a production-line process, they assemble clutches, using as many parts from the bins as possible. When there are insufficient parts in the bins, production rebuilders use new parts. Production rebuilder Century does not have records indicating which parts in each rebuilt clutch were new. Rebuilt clutches are sold in competition with Dana's new, unused clutches.

Before the district court, Dana alleged that Century's rebuilding of the core clutches constituted direct infringement, and APC/IAT, who supplied Century with new parts that Dana calls "key" parts, are liable as contributory infringers. The key parts differ from each other and are among dozens of parts that go to make the patented clutches. Though a single such part, if it met the criteria of 35 U.S.C. § 271(c), could result in contributory infringement, Dana cited no more than four such new parts for each patent in suit. Dana limited its direct-infringement claim to those unpatented key parts, which were never more than four in any one clutch.

The district court sustained Century's defense that it had engaged in permissible repair and had not "reconstructed" the patented clutches and thus that Century was not a direct infringer. Rejecting as a matter of law Dana's argument that Century was infringing because it was using "key" or "essential" parts obtained from APC/IAT, 618 F.Supp. at 291–93, the district court determined that even the use of

all four *new* "key" parts in one rebuilt clutch would not constitute direct infringement. *Id.* at 293–94. Lastly, the district court held that the difference in *method* of rebuilding, *i.e.*, repair & return versus production rebuilding, was a distinction without legal significance and could not transform a repair into a reconstruction. *Id.* at 294–95.

Having severed all of the nonpatent claims, the district court entered final judgment under Fed.R.Civ.P. 54, based on Dana's failure to establish direct infringement by Century. The district court dismissed without prejudice Dana's claim against IAT for direct infringement of the '855 patent, Dana's claim against APC for unfair competition, and all counterclaims. Century, having filed for bankruptcy, is not a party to this appeal.

On appeal, as before the district court, Dana challenges only the use of certain new parts (no more than four in any rebuilt clutch) when those parts are sold to Century by APC/IAT but not when those parts are sold to Century by Dana.[3] Dana does not contend that production rebuilding using only binned parts from used clutches amounts to direct infringement. Nor does it base an argument on the importance of the new parts used, except to note that it made that argument before the district court only because it wished to limit its direct-infringement claim to parts which it considered a basis for a claim of contributory infringement. Dana concedes that if a repair & return rebuilder had used the same new parts and returned each individual clutch to its owner there would be no infringement.

### *Issue*

Whether the district court erred in granting summary judgment for APC/IAT.

---

**3.** APC/IAT argue that Dana's concession (that purchasers do not directly infringe when using Dana parts but do when using non-Dana parts) establishes an attempt to illegally condition the sale of its patented clutches on the purchase of unpatented replacement parts, citing the plurality ruling in *Aro Manufacturing Co. v. Convert-*

*ible Top Replacement Co.,* 377 U.S. 476, 493–500, 84 S.Ct. 1526, 1536–39, 12 L.Ed.2d 457, 141 USPQ 681, 689–91 (1964) (*Aro II*). The argument, however, depends on whether replacing the parts here amounted to permissible repair or impermissible reconstruction.

## OPINION

To sustain its burden on appeal, Dana must show that the district court erred when it determined that there was no genuine issue of material fact and that APC/IAT were entitled to judgment as a matter of law. *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1568, 230 USPQ 393, 395 (Fed.Cir.1986), *cert. dismissed*, — U.S. ——, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987); *Chemical Engineering Corp. v. Essef Industries, Inc.*, 795 F.2d 1565, 1571, 230 USPQ 385, 389 (Fed.Cir.1986). All doubt respecting the presence or absence of material factual issues must be resolved in favor of the party opposing summary judgment, here Dana. *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 2 USPQ2d 1271, 1273 (Fed.Cir.1987); *Petersen Manufacturing Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1546, 222 USPQ 562, 565–66 (Fed.Cir.1984). This court is held to the same criteria. *See Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260–61, 225 USPQ 697, 700–01 (Fed.Cir. 1985).

For purposes of this appeal, we assume that the patent claims read on Century's rebuilt clutches and on those of other production rebuilders. Though Dana would have us do so, we need not determine whether the new parts sold to Century and other rebuilders by APC/IAT meet the contributory infringement criteria set forth in section 271(c), because the district court based its ruling solely on the absence of direct infringement by Century, i.e., on its determination that Century's activities constituted permissible repair and not prohibited reconstruction.

This court has affirmed the grant of summary judgment to an alleged infringer who supplied unpatented parts to those who purchased the patented device from the patentee, where there were no disputed issues of material fact, the trial court had properly construed the claims, and a finding of infringement would therefore have been impossible. *Porter v. Farmers Supply Service, Inc.*, 790 F.2d 882, 884–85, 229 USPQ 814, 815–16 (Fed.Cir.1986) (upholding determination that replacement of worn part in patented combination constituted permissible repair, not impermissible reconstruction).

Dana says the repair-reconstruction question raises a genuine issue of material fact precluding summary judgment. Because it was not argued in *Porter*, this court did not discuss the question of whether a purchaser's affirmative defense that its action was within its implied license to repair the patented combination is determinable as one of law, as the district court in that case stated, 617 F.Supp. 1175, 1185 n. 6, 228 USPQ 1, 7 n. 6 (D.Del.1985). Questions of law are not answerable in a vacuum. Only after the necessary fact pattern exists can the legal question be answered. When, as here, there is no genuine issue of material fact, or when, after a trial the facts have been found, the question of whether the defendant's conduct constituted permissible repair is answerable as a question of law. We thus explicitly hold that, in determining whether the facts of record establish the implied license defense, a court is answering a question of law.

In *Aro I*, the Supreme Court reversed a reconstruction holding as a matter of law, noting that its decisions "require the conclusion that reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to 'in fact make a new article,' ... after the entity, viewed as a whole, has become spent," that there must be a "second creation" of the patented invention, and that "[m]ere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property." 365 U.S. at 346, 81 S.Ct. at 604, 128 USPQ at 359; *see also Wilbur-Ellis Co. v. Kuther*, 377 U.S. 422, 84 S.Ct. 1561, 12 L.Ed.2d 419, 141 USPQ 703 (1964).

Dana goes on to argue that the repair-reconstruction question depends on other facts which must be determined at trial: (a) whether the clutch cores were "spent" at the time the rebuilders salvaged them for parts; and (b) whether production-line as-

sembly of those clutches constitutes a "second creation" or "true reconstruction" of the claimed invention. Dana argues that wholly disassembling the used clutches is by itself a voluntary act which causes the patented combination to become "spent" and that, therefore, the record contains substantial evidence that the rebuilder has engaged in a "second creation."

■ Dana's alleged genuine issues of material fact (a) and (b) are actually two sides of the same coin. A rebuilder of a "spent" clutch would have to be "recreating" the clutch, and conversely, a rebuilder of a clutch that is not spent could not be recreating the clutch. In view of Dana's concessions, we hold that neither (a) nor (b) is a genuine issue of material fact in this case.

Dana does not contend that replacement of the four parts to which it has limited its direct-infringement claim constitutes a reconstruction. On the contrary, Dana concedes that if a repair & return rebuilder individually rebuilt clutches using the same new parts used here in the production-line method, there would be no direct infringement. It is undisputed that Dana intends that its clutches be repairable; it sells repair parts and publishes a repair manual. Thus, Dana's argument hinges upon its attempted distinction between the two processes for rebuilding clutches and a determination that the production method entails a voluntary and complete destruction of the patented clutches. However, we agree with the district court that use of the production-line *method* cannot convert what Dana concedes is permissible repair to impermissible reconstruction.[4]

The district court appropriately cited *General Electric Co. v. United States*, 215 Ct.Cl. 636, 572 F.2d 745, 198 USPQ 65 (1978). In *General Electric*, the Court of Claims, one of our predecessor courts whose decisions bind us, *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed.

Cir.1982) (*in banc*), reversed a trial commissioner's ruling that the Navy's "overhauling" of a patented gun mount was an infringing reconstruction. There the Navy had employed a production method similar to that used by the production rebuilders here. Dana correctly points out that, in reversing, the court said the trial commissioner ignored a particular fact: the replacement parts were supplied primarily by the patentee, General Electric Co.[5] However, that limited reading of *General Electric* does not diminish the import of the Court of Claims' recognition that the repair & return and production-line methods produce precisely the same result:

The trial judge thought [he could not rule that there had been a repair] here primarily because of "the complete disassembly at NOS Louisville and the failure to maintain gun mount integrity between components, the substitution of the next available components from stock or overhaul for all original components removed from the gun mount regardless of whether or not the removed components were individually spent and the failure to return the gun mount to its original vessel,".... We do not think that these factors call for a different conclusion than in *Wilbur-Ellis*. The assembly-line method adopted at Louisville was simply a speedier, less expensive, more efficient, and more effective means of refurbishing the gun mounts than if they had been disassembled and renovated gun mount by individual gun mount, and then returned to the same ship—and the end-result was precisely the same. Disassembly and renovation by individual gun mount would surely not be enough to show reconstruction—or *Wilbur-Ellis* could not have been decided as it was— but it would have been a much more burdensome, time-consuming, and costly procedure. *Achieving precisely the same result by a more practical, eco-*

---

4. Dana's argument that the district court improperly assumed that rebuilders are permissibly repairing when they do not use the production method is without merit, Dana having conceded that point with respect to repair & return rebuilders. *See* 618 F.Supp. at 291.

5. We assume that Dana limited its infringement claim to use of non-Dana parts to bring its case within this view of *General Electric*, and not to control the replacement-parts business as alleged by APC/IAT. *See supra* note 3.

*nomical and convenient process is surely not required by the patent law in order to avoid imposition of further liability. The substance of what was done to the mounts would be the same by either method, the difference being simply that the procedure followed by the Navy at Louisville was easier, quicker and less expensive.*

572 F.2d at 785–86, 198 USPQ at 99 (emphasis added).

■ In rejecting Dana's attempted distinction between the two methods of rebuilding, the district court also noted *TSC Industries, Inc. v. International Harvester Co.*, 406 F.2d 53, 160 USPQ 34 (7th Cir.1968), in which the Seventh Circuit reversed a district court's reconstruction holding, specifically overturning the ruling that an alleged infringer's disassembly amounted to a destruction of the original patented combination. Dana's attempt to distinguish *TSC Industries* on the ground that the patented combination was not there spent is, as above indicated, unavailing. We reject Dana's argument that disassembly by the production rebuilders in this case constitutes voluntary destruction of the patented clutch.

Offering an economic analysis as a substitute for what it perceives as an ad hoc approach to the repair-versus-reconstruction question in the courts, Dana says the focus should be on "spentness," and that whether the patented product is "spent" should turn on the owner's economic evaluation of the product, rather than on an examination of its physical characteristics. Dana says a patented product should be deemed "spent" when a user, making an objective economic decision, would replace the product rather than repair it, because it has no value to the owner except as scrap.

Dana's approach is interesting, but unavailing, for it has the same degree of uncertainty Dana finds in the case law. In the present case, for example, truck owners desiring to keep their trucks on the road would desire a quick replacement of their inoperative clutch with an existing rebuilt clutch. That decision rests little, if at all, on the owner's objective view of the defective clutch's condition. Moreover, that a clutch owner is paid a nominal or scrap-value sum for the core as a trade-in means the price of a rebuilt clutch is accordingly reduced. Until the Supreme Court or the Congress directs us to apply a different analysis, this court is bound to follow the guidelines laid down in *Aro I* and its progeny.

Dana's last two arguments for reversal are: (a) the district court did not address Dana's showing that Century made hundreds of all new Angle Spring Clutches from new parts supplied by APC/IAT and other suppliers; and (b) Dana was entitled to establish direct infringement by rebuilders other than Century. Neither argument has merit.

Argument (a) flies in the face of Dana's limitation of its claims to the parts listed in the district court's opinion. *See* 618 F.Supp. at 289–90. Because of that limitation, the district court correctly declined to rule on the assertion that Century made clutches using all new parts. Dana cannot now change course.

■ Dana's argument (b) is equally baseless. Dana is entitled to establish that other rebuilders were direct infringers without their being parties to the suit, *see Refac International Ltd. v. IBM*, 798 F.2d 459, 460, 230 USPQ 537, 538 (Fed.Cir.1986), but the district court drew all inferences in favor of Dana and assumed that all other builders operated as Dana said they did. Thus, the conduct of other rebuilders was undisputed. For that reason, the district court did not abuse its discretion in denying Dana further discovery of other rebuilders.

## CONCLUSION

We affirm the grant of summary judgment to APC/IAT, based on Dana's failure to establish on this record a genuine issue of material fact concerning the absence of direct infringement. APC/IAT's request that this court impose sanctions under Fed. R.Civ.P. 38(a) against Dana for pursuing this appeal is denied.

AFFIRMED.