**BOTTOM LINE MANAGEMENT,
INC., Plaintiff–Appellant,**

v.

**PAN MAN, INC. and Garry T. Less,
Defendants–Appellees.**

No. 99–1467.

United States Court of Appeals,
Federal Circuit.

Decided: Oct. 4, 2000

James R. Higgins, Jr., Middleton & Reutlinger, of Louisville, Kentucky, argued for plaintiff-appellant. With him on the brief were Charles G. Lamb, Dennis D. Murrell, and Thomas P. O'Brien, III.

John H. Ward, Much Shelist Freed Denenberg Ament & Rubenstein, P.C., of Chicago, Illinois, argued for defendants-appellees. With him on the brief was Lorne T. Saeks.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

Once again, we must determine whether certain refurbishment of a patented article constitutes permissible repair or infringing reconstruction. The district court held that what was done here was repair. We affirm.

## I

This case involves commercial two-sided cooking devices used primarily to cook hamburgers in fast-food restaurants. These devices have a clam shell design, with a lower half that rests on a work surface, and a heated, moveable upper half or lid. Both halves have flat cooking surfaces. Hamburgers are placed on the lower cooking surface and the lid is closed, placing the upper cooking surface on top of the food. This arrangement allows the hamburgers to be cooked from both sides simultaneously, greatly decreasing the required cooking time, facilitating an even degree of cooking throughout, and eliminating the need to flip the hamburgers.

The appellant Bottom Line Management, Inc. ("Bottom Line") manufactures a removable upper cooking surface, described as a "platen," for these two-sided cookers. It consists essentially of a flat rectangular aluminum plate. The side of the plate that comes into contact with the food has rounded edges and a Teflon coating. The other side of the plate, which faces upward during operation and is in contact with the heating element in the upper moveable half of the cooker, has a stepped edge and a number of studs welded to it, which are used to attach or bolt the platen to the upper half of the cooker. Part of the novelty of the invention is that the studs are welded to the back of the plate rather than bolted to it, giving the side that touches the food a smooth unpenetrated surface with no seams. This facilitates uniform Teflon coating and eliminates accumulation of food deposits and grease in the seams on the working surface of the prior art platens.

The Teflon coating on the platen eventually wears off with use. Each platen has a useful life of approximately six to twelve months before it must be replaced or refurbished. In removing a worn platen, customers often bend or break off some of the studs on the back, which must be repaired or replaced before a refurbished platen may be reused.

Bottom Line sells new platens for approximately ninety dollars. Customers that return worn out platens to Bottom Line may purchase a new replacement for a discounted price. Bottom Line does not refurbish the used platens; its manufacturing techniques make it more cost effective simply to produce new ones.

The appellee Pan Man, Inc. refurbishes and resells used platens. Pan Man cleans the platen by grit blasting, replaces the old Teflon coating on the cooking surface, and repairs or replaces any broken or bent studs by unbending them or by hand-welding new ones. Platen users send in their old platens, and Pan Man provides them with reconditioned platens for about forty dollars. Sometimes the worn platens were in use just prior to being shipped to Pan Man for refurbishing. Normally, the replacement platens were not the same arti-

cles that Pan Man received from the particular user.

Bottom Line's U.S. Patent No. 5,070,775 ("the '775 Patent") covers the platen and the method for producing it. Claim 1 covers:

> A cooking surface device for the upper movable heated platen of a two-sided cooking device, comprising:
>
> a planar plate of a relatively high heat conducting material, said plate having an upper and lower surface and radiused peripheral side edge arcuately blending with the lower surface of the plate;
>
> a layer of synthetic material coating the lower surface and the radiused peripheral edge of said plate; and,
>
> a plurality of threaded studs welded to and projecting from the upper surface of said plate.

The specification of the patent itself states that the device can be refurbished:

> The [platen] surface device is easily removed from the [cooker] by removing the nuts from the studs. Therefore, after extended use, the [platen] can be removed from the [cooker] and a new or refurbished [platen] installed. The original [platen] can then be refurbished by grit blasting the coating of non-stick material from the plate and covering the plate with a new coating.

'775 Patent, col. 4, ll. 28–35 (diagram references omitted).

Bottom Line sued Pan Man in the United States District Court for the Eastern District of Kentucky for infringement of its '775 Patent by refurbishing the Bottom Line platens. Both sides moved for summary judgment. Pan Man argued that its actions constituted permissible repair of a patented article, and Bottom Line countered that they were infringing reconstruction of it.

The district court held that Pan Man's activities were permissible repair, and granted summary judgment dismissing the complaint. The court stated that Pan Man was merely "refurbishing the Teflon coating and making incidental repairs to minor damage cause by preparation of the platen

for shipment." The court noted that "Bottom Line all but admitt[ed] that cleaning, recoating, and unbending bolts does not constitute infringement" and therefore the "case is reduced to a question of whether the replacement of one or more broken bolts from the back of the platen somehow transforms the job from the category of refurbishment and repair to reconstruction." The court concluded:

> As already noted, "breakage" is among the circumstances which gives rise to a lawful repair. A broken part may be replaced in a manner consistent with sound engineering. If the broken part was originally welded to the device, the replacement part should obviously be welded to the device. The act of straightening or replacing a bolt on the back of a platen is, at its worst, the correction of a partial destruction, but is certainly not a reconstruction of the 775 Patent. In essence, Pan Man is doing nothing more than refurbishing the Teflon coating and making incidental repairs to minor damage caused by preparation of the platen for shipment.

## II

██ Unless the parties provide otherwise, the purchaser of a patented article has an implied license not only to use and sell it, but also to repair it to enable it to function properly. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 346, 81 S.Ct. 599, 5 L.Ed.2d 592, 128 U.S.P.Q. 354, 359 (1961). This implied license covers both the original purchaser of the article and all subsequent purchasers. *Hewlett–Packard Co. v. Repeat–O–Type Stencil Mfg. Corp.*, 123 F.3d 1445, 1451, 43 U.S.P.Q.2d 1650, 1656 (Fed.Cir.1997) (when a patentee sells products, it has "parted with the right to ... exclude the purchaser from using or selling them," and ruling that the defendant's buying patented products, modifying them and reselling them was akin to non-infringing repair); *Dana Corp. v. American Precision Co.*, 827 F.2d 755, 3 U.S.P.Q.2d 1852 (Fed.Cir.

1987) (permissible repair where the defendant sold rebuilt patented vehicle clutches that it assembled on a production line, using parts from completely disassembled worn out clutches traded in by prior customers along with some new parts).

■ The purchaser of a patented article, however, cannot go beyond repairing the article to reconstruct it. As the Supreme Court explained in *Aro*, in holding that the replacement of the fabric in a patented automobile convertible top was repair, not reconstruction:

> [R]econstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to "in fact make a new article" ... after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity ... Mere replacement of individual unpatented parts, one at a time ... is no more than the lawful right of the owner to repair his property.

*Aro*, 365 U.S. at 346, 81 S.Ct. 599, 5 L.Ed.2d 592, 128 U.S.P.Q. at 359 (citations omitted). *See also Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 217, 100 S.Ct. 2601, 65 L.Ed.2d 696, 206 U.S.P.Q. 385, 405 (1980) (recounting *Aro* ).

■ "[T]here is no bright-line test for determining whether reconstruction or repair has occurred." *Sandvik Aktiebolag v. E.J. Co.*, 121 F.3d 669, 674, 43 USPQ2d 1620, 1624 (Fed.Cir.1997). This court there stated: "There are a number of factors to consider in determining whether a defendant has made a new article, after the device has become spent, including the nature of the actions by the defendant, the nature of the device and how it is designed (namely, whether one of the components of the patented combination has a shorter useful life than the whole), whether a market has developed to manufacture or service the part at issue and objective evidence of the intent of the patentee." 121 F.3d at 673, 43 U.S.P.Q.2d at 1623. The ultimate determination of repair or recon-

struction is based upon "the totality of the circumstances," *id.*, upon "all of the facts in this case." 121 F.3d at 674, 43 U.S.P.Q.2d at 1624. It is a question of law. *Dana Corp.*, 827 F.2d at 758, 3 U.S.P.Q.2d at 1854.

■ On the facts of this case, the district court correctly held that what Pan Man did constituted repair, not reconstruction.

The patented article, of course, is the entire platen, not any particular element of it. Claim 1 covers "[a] cooking surface device for the upper movable heated platen of a two-sided cooking device, comprising" three elements: "a planar plate" with specified characteristics; "a layer of synthetic material coating the lower surface and the radiused peripheral edge of said plate;" and the "threaded studs welded to and projecting from the upper surface of said plate." To refurbish the "planar plate," all Pan Man did was (1) to clean it, (2) to reapply the Teflon coating to its bottom surface, and (3) to repair or replace (by welding) any studs that had been bent or broken in removing the platen from the top of the cooker.

That is precisely what the patent stated could be done: "after extended use, the [platen] can be removed from the [cooker] and a new or refurbished [platen] installed. The original [platen] can then be refurbished by grit blasting the coating of nonstick material from the plate and covering the plate with a new coating." '775 Patent, col. 4, ll. 28–35 (diagram references omitted). The patent thus also recognizes that "one of the components of the patented combination [the Teflon coated lower surface] has a shorter useful life than the whole." *Sandvik Aktiebolag*, 121 F.3d at 673, 43 U.S.P.Q.2d at 1623. Pan Man's business of refurbishing the platens also shows that "a market has developed to ... service the part at issue." *Id.*

The relatively minor refurbishing of Bottom Line's product that Pan Man did is a far cry from the "true reconstruction of

the entity as to 'in fact make a new article' ... a second creation of the patented entity" that is necessary for refurbishing to constitute reconstruction rather than repair. *Aro,* 365 U.S. at 346, 81 S.Ct. 599, 5 L.Ed.2d 592, 128 U.S.P.Q. at 359 (citation omitted). As the Supreme Court stated in *Aro:* "Mere replacement of individual unpatented parts, one at a time, ... is no more than the lawful right of the owner to repair his property." *Id.* The district court properly concluded: "In essence, Pan Man is doing nothing more that refurbishing the Teflon coating and making incidental repairs to minor damage cause by preparation of the platen for shipment."

Bottom Line states that "a critical part of the procedure employed by Pan–Man to render spent Bottom Line cooking surface devices reusable involves the very specialized welding taught in the '775 Patent— the point of novelty on which the PTO issued the '775 Patent." The patent, however, does not claim any specialized welding; it claims only the "threaded studs welded to and projecting from the upper surface of said plate." Whatever the patent may teach about "very specialized welding," Bottom Line cannot use this unclaimed teaching to convert repair into reconstruction. *See TSC Indus., Inc. v. International Harvester Co.,* 406 F.2d 53, 160 U.S.P.Q. 34 (7th Cir.1968) (permissible repair even though the accused infringer used the same technique to repair the product that the patentee used to manufacture it).

In its brief and reply brief Bottom Line repeatedly states that the platens that were furnished to Pan Man were "spent," and that their refurbishing therefore constituted reconstruction rather than repair. It cites references in an affidavit by its chief executive officer to "spent" platens it receives back from its customers, and the following response it made to an interrogatory: "After a stud breaks or is bent to the point of requiring replacement, the platen has reached the end of its useful life and is spent. Without replacement of the studs, the spent platen has no remaining value."

Those conclusory statements do not establish that the platens were spent. Moreover, the term "spent", as the Supreme Court and this court have used it, is but a shorthand way of stating that the patented article had so deteriorated that it could not be repaired and could be resurrected only by reconstruction, *i.e.,* by making a new article. Bottom Line's platens were not "spent" when their users furnished them to Pan Man for refurbishing. The same reasoning also refutes Bottom Line's contention that there were disputed factual issues whether the platens were spent that precluded summary judgment.

Bottom Line further contends that the district court should have held that the repaired platens infringed apparatus claims 1 and 2 of the '775 patent and that the court erred in not addressing that issue. It states that Pan Man's refurbished platens contained all the structural elements of those two claims, and argues that Pan Man "sold" those items to their users and therefore infringed those claims.

Our holding that Pan Man's activities constituted permissible repair and not infringing reconstruction is dispositive of that argument. *Cf. Dana Corp.,* 827 F.2d at 758, 3 U.S.P.Q.2d at 1854. As noted above, the right of the purchaser of a patented article to repair it also authorizes subsequent owners of that article to do so. Since the repaired article ordinarily will have the structural limitations of the original, Bottom Line's argument would in effect eliminate the distinction between repair and reconstruction and so treat all repairs as infringing replacements of the patented article. Indeed, after the fabric portion of the convertible top was replaced in *Aro,* the entire top itself presumably also had the structural elements of the patented article. The Supreme Court, however, held that there was no infringement because the replacement of the cloth cover was permissible repair. That reasoning also covers the present case.

## CONCLUSION

The judgment of the district court granting summary judgment dismissing the complaint is

*AFFIRMED.*