**JAZZ PHOTO CORPORATION,**
Appellant,

and

**Dynatec International, Inc., Appellant,**

and

**Opticolor, Inc., Appellant,**

v.

**INTERNATIONAL TRADE COMMISSION,**
Appellee,

and

**Fuji Photo Film Co., Ltd., Intervenor.**

Nos. 99–1431, 99–1504, 99–1595, 99–1596, 99–1601.

United States Court of Appeals, Federal Circuit.

Aug. 21, 2001.

Rehearing and Rehearing En Banc Denied Nov. 9, 2001.*

---

* RADER, Circuit Judge, would rehear the appeal en banc.

Jeffrey I. Kaplan, Kaplan & Gilman, L.L.P., of Woodbridge, NJ, argued for appellant Jazz Photo Corporation.

L. David Griffin, Workman, Nydegger & Seeley, of Salt Lake City, UT, argued for appellant Dynatec International, Inc. With him on the brief were Larry R. Laycock, and David R. Wright.

Richard L. Goff, Heller Ehrman White & McAuliffe, of Seattle, WA, for appellant Opticolor, Inc.

Jean H. Jackson, Attorney, Office of General Counsel, U.S. International Trade Commission, of Washington, DC, argued for appellee United States International Trade Commission. With her on the brief were Lyn M. Schlitt, General Counsel; and James A. Toupin, Deputy General Counsel. Of counsel were Andrea C. Casson, Attorney; and Shara L. Aranoff, Attorney.

Lawrence Rosenthal, Stroock & Stroock & Lavan LLP, of New York, NY, argued for intervenor Fuji Photo Film Co., Ltd. With him on the brief were Mattthew W. Siegel, James J. DeCarlo, and Lisa A. Jakob. Of counsel on the brief were Will E. Leonard, Jr., and F. David Foster,

Ablondi, Foster, Sobin & Davidow, P.C., of Washington, DC.

Before NEWMAN, MICHEL, and GAJARSA, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In an action brought under section 337 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1337, Fuji Photo Film Co. charged twenty-seven respondents, including the appellants Jazz Photo Corporation, Dynatec International, Inc., and Opticolor, Inc., with infringement of fifteen patents owned by Fuji. The charge was based on the respondents' importation of used "single-use" cameras called "lens-fitted film packages" (LFFP's), which had been refurbished[1] for reuse in various overseas facilities. Section 337 makes unlawful "[t]he importation into the United States ... of articles that ... infringe a valid and enforceable United States patent ... [or that] are made, produced, processed, ... under, or by means of, a process covered by the claims of a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B). Eight respondents did not respond to the Commission's complaint, ten more failed to appear before the Commission, and one was dismissed. Eight respondents participated in the hearing, and three have taken this appeal.

The Commission determined that twenty-six respondents, including the appellants, had infringed all or most of the claims in suit of fourteen Fuji United States patents,[2] and issued a General Exclusion Order and Order to Cease and Desist. *In the Matter of Certain Lens–Fitted Film Packages,* Inv. No. 337–TA–406 (Int'l Trade Comm'n June 28, 1999). This court stayed the Commission's orders during this appeal. *Dynatec Int'l, Inc. v. Int'l Trade Comm'n,* No. 99–1504 (Fed. Cir. Sept. 24, 1999) (unpublished).

The Commission's decision rests on its ruling that the refurbishment of the used cameras is prohibited "reconstruction," as opposed to permissible "repair." On review of the law and its application, we conclude that precedent does not support the Commission's application of the law to the facts that were found. We conclude that for used cameras whose first sale was in the United States with the patentee's authorization, and for which the respondents permitted verification of their representations that their activities were limited to the steps of (1) removing the cardboard cover, (2) cutting open the plastic casing, (3) inserting new film and a container to receive the film, (4) replacing the winding wheel for certain cameras, (5) replacing the battery for flash cameras, (6) resetting the counter, (7) resealing the outer case, and (8) adding a new cardboard cover, the totality of these procedures does not satisfy the standards required by precedent for prohibited reconstruction; precedent requires, as we shall discuss, that the de-

---

1. We use "refurbish" as a convenient neutral term without legal significance, intended to connote neither "repair" nor "reconstruction" of the used cameras.

2. The patents are: United States Patent No. 4,833,495 (claims 1, 5, 6, 9 and 11) (the '495 patent); Patent No. 4,855,774 (claims 14 and 15) (the '774 patent); Patent No. 4,884,087 (claims 1, 7, and 8) (the '087 patent); Patent No. 4,954,857 (claims 1, 19 and 22) (the '857 patent); Patent No. 4,972,649 (claims 1 and 9) (the '649 patent); Patent No. 5,235,364 (claims 1 and 11) (the '364 patent); Patent No. 5,361,111 (claim 1) (the '111 patent); Patent No. 5,381,200 (claims 1, 15, 23 and 25) (the '200 patent); Patent No. 5,408,288 (claims 1 and 7) (the '288 patent); Patent No. 5,436,685 (claims 1 and 28) (the '685 patent); Patent No. Re 34,168 (claims 1 and 13) (the RE '168 patent); Design Patent No. D 345,-750 (the D '750 patent); Design Patent No. D 356,101 (the D '101 patent); and Design Patent No. D 372,722 (the D '722 patent).

scribed activities be deemed to be permissible repair.

For those cameras that meet the criteria outlined above, the Commission's ruling of patent infringement is reversed and the Commission's exclusion and cease and desist orders are vacated. For all other cameras, the Commission's orders are affirmed.

## DISCUSSION

 Commission factual findings are reviewed in accordance with the standards of the Administrative Procedure Act, and are sustained when they are supported by substantial evidence. 5 U.S.C. § 706(2)(E); *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1019, 4 USPQ2d 1283, 1284–85 (Fed.Cir. 1987). The Commission's legal determinations receive plenary review. *Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n,* 54 F.3d 756, 759–60, 35 USPQ2d 1042, 1045 (Fed.Cir.1995). The application of the law of repair and reconstruction to fact is treated in precedent as a legal determination, and is reviewed without deference. *Sandvik Aktiebolag v. E.J. Co.,* 121 F.3d 669, 672, 43 USPQ2d 1620, 1622 (Fed.Cir.1997).

I

## *The Patented Inventions*

The LFFP is a relatively simple camera, whose major elements are an outer plastic casing that holds a shutter, a shutter release button, a lens, a viewfinder, a film advance mechanism, a film counting display, and for some models a flash assembly and battery. The casing also contains a holder for a roll of film, and a container into which the exposed film is wound. At the factory a roll of film is loaded into the camera. The casing is then sealed by ultrasonic welding or light-tight latching, and a cardboard cover is applied to encase the camera.

LFFPs are intended by the patentee to be used only once. After the film is exposed the photo-processor removes the film container by breaking open a pre-weakened portion of the plastic casing which is accessed by removal of the cardboard cover. Discarded LFFPs, subsequently purchased and refurbished by the respondents, are the subject of this action.

The parts of an LFFP are illustrated in Figure 8 of the '087 patent:

## FIG. 8

Claim 1 of the '087 patent is representative of claims directed to the entire LFFP:

1. A lens-fitted photographic film package having an externally operable member for effecting an exposure, comprising:

a light-tight film casing which must be destroyed to open the same, having an opening through which said exposure is made when said externally operable member is operated;

an unexposed rolled film disposed on one side of said opening in said light-tight casing;

a removable light-tight film container having a film winding spool therein disposed on the opposite side of said opening in said light-tight casing from said rolled film, one end of said rolled film being attached to said film winding spool;

means for winding said rolled film into said light-tight film container and around said film winding spool;

and winding control means responsive to operation of said externally operable member for allowing said film winding spool to rotate so as to enable said rolled film to be advanced by only one frame after every exposure; said winding control means including: a sprocket wheel driven by movement of said rolled film;

and a frame counter driven by said sprocket wheel, said frame counter being provided with indications designating a series of frame numbers and means for disabling said winding control means responsive to said frame counter indicating there remains on said unexposed film no film frame capable of being exposed.

Other patents are directed to various components of the LFFP. The '857 patent is directed to a specific film winding mechanism. The '495 patent is directed to a mechanism whereby the film in the LFFP is advanced smoothly without being scratched or gouged, and which prevents the film roll from becoming loose. The '774 patent is directed to the film chambers and film path. The '364 patent claims the LFFP with a flash unit comprising a circuit board, a capacitor, a discharge (flash) tube, and a battery. The '111 patent is directed to the pushbutton that trips the shutter and has a protective

structure that prevents the pushbutton from accidentally being depressed. The '200 patent is directed to the shutter mechanism, including the shutter mount, shutter opening, and shutter blade. The '288 patent claims an LFFP in which the winding wheel and film cassette are positively linked through a gear and shaft mechanism requiring the two to rotate relative to each other, avoiding the loss of usable film. The '685 patent is directed to an LFFP assembly that allows easier recycling of used plastic and metal, in which the plastic casing including the film path and film chambers is easily separable from the photo-taking unit containing metal parts including the shutter mechanism and the winding and stop mechanisms.

It is not disputed that the imported refurbished cameras contain all of the elements of all or most of the claims in suit.

### The Accused Activities

The appellants import used LFFPs that have been refurbished by various overseas entities (called "remanufacturers" in the ITC proceeding). Some of the remanufacturers refused discovery entirely or in part, and some presented evidence that the ALJ found incomplete or not credible. The Commission explains: "Since so little was known about the accused infringing processes, the ALJ considered the common steps that each participating respondent admitted during the hearing were part of their processes." ITC Brief at 15–16. The ALJ summarized these common steps as follows:

- removing the cardboard cover;
- opening the LFFP body (usually by cutting at least one weld);
- replacing the winding wheel or modifying the film cartridge to be inserted;
- resetting the film counter;
- replacing the battery in flash LFFPs;
- winding new film out of a canister onto a spool or into a roll;
- resealing the LFFP body using tape and/or glue;
- applying a new cardboard cover.

Initial Determination at 108–109. The Commission held that these activities constitute prohibited reconstruction. In view of this holding, it was not material to the Commission's ruling that the full extent of various respondents' activities was not made known, for in all events the importation would be infringing and unlawful.

The appellants argue that they are not building new LFFPs, but simply replacing the film in used cameras. They argue that the LFFPs have a useful life longer than the single use proposed by Fuji, that the patent right has been exhausted as to these articles, and that the patentee can not restrict their right to refit the cameras with new film by the procedures necessary to insert the film and reset the mechanism. Unless these activities are deemed to be permissible, infringement of at least some of the patents in suit is conceded.

### Burden and Standard of Proof

On this appeal there is much argument as to the burden and standard of proof. The administrative law judge ruled that the respondents must prove that their remanufactured cameras meet the criteria of permissible repair by clear and convincing evidence. The Commission held that this was not the correct standard, and that the respondents were required to prove the affirmative defense of permissible repair by no more than a preponderance of the evidence. However, the Commission found that this error did not change the correctness of the ALJ's conclusion that the respondents' actions were impermissible reconstruction of the patented articles.

 While it is not disputed that repair is an affirmative defense, *see Dana*

*Corp. v. American Precision Co.*, 827 F.2d 755, 758, 3 USPQ2d 1852, 1854 (Fed.Cir. 1987) (characterizing repair as an affirmative defense of implied license), the parties disagree as to the order of coming forward with evidence, as well as the placement of the burden of proving that the accused activities are infringing reconstruction. The appellants state that the burden of proving infringement does not leave the patentee, and thus that the Commission incorrectly placed upon the appellants the burden of proving noninfringement. The appellants also argue that Fuji's unrestricted first sale of the patented cameras satisfied *prima facie* the appellants' burden on the affirmative defense of repair, for it established that the patent right had been exhausted; they state that this shifted to the patentee the burden of proving that the accused activities were not repair. In support the appellants cite *General Electric Co. v. United States*, 215 Ct.Cl. 636, 572 F.2d 745, 783 n. 17, 198 USPQ 65, 97 n. 17 (1978), where the court noted that "Plaintiff, of course, has the burden of proof on issues relating to infringement (including 'reconstruction')."

The Commission ruled that "Once Fuji carried its burden of proof that its claims covered the remanufactured cameras, it was up to appellants to prove their affirmative defense that they were only repairing the cameras, not reconstructing them." The Commission has correctly described this evidentiary sequence. The initial burden is upon the complainant to establish its cause of action, here patent infringement; the patentee must present evidence sufficient to establish that one or more patent claims are infringed. The respondents did not dispute that many or most of the claims in suit read literally on their refurbished cameras. Thus Fuji met its initial burden of showing infringement.

■ The burden of establishing an affirmative defense is on the party raising the defense. The Commission correctly held that the respondents had the burden of establishing this defense by a preponderance of the evidence, including the burden of coming forward with evidence to show that the activities performed in processing the used cameras constituted permissible repair.

### The Law of Permissible Repair and Prohibited Reconstruction

■ The distinction between permitted and prohibited activities, with respect to patented items after they have been placed in commerce by the patentee, has been distilled into the terms "repair" and "reconstruction." The purchaser of a patented article has the rights of any owner of personal property, including the right to use it, repair it, modify it, discard it, or resell it, subject only to overriding conditions of the sale. Thus patented articles when sold "become the private individual property of the purchasers, and are no longer specifically protected by the patent laws." *Mitchell v.. Hawley*, 83 U.S. (16 Wall.) 544, 548, 21 L.Ed. 322 (1872). The fact that an article is patented gives the purchaser neither more nor less rights of use and disposition. However, the rights of ownership do not include the right to construct an essentially new article on the template of the original, for the right to make the article remains with the patentee.

■ While the ownership of a patented article does not include the right to make a substantially new article, it does include the right to preserve the useful life of the original article. It is readily apparent that there is a continuum between these concepts; precedent demonstrates that litigated cases rarely reside at the poles wherein "repair" is readily distinguished from "re-

construction." Thus the law has developed in the body of precedent, illustrating the policy underlying the law as it has been applied in diverse factual contexts. *Cf. Goodyear Shoe Mach. Co. v. Jackson,* 112 F. 146, 150 (1st Cir.1901) ("It is impracticable, as well as unwise, to attempt to lay down any rule on this subject, owing to the number and infinite variety of patented inventions.")

The principle of the distinction between permissible and prohibited activities was explained in *Wilson v. Simpson,* 50 U.S. (9 How.) 109, 13 L.Ed. 66 (1850), where the Court distinguished the right of a purchaser of a patented planing machine to replace the machine's cutting-knives when they became dull or broken, from the patentee's sole right to make or renew the entire machine. The Court observed that the knives had to be replaced every 60–90 days whereas the machines would last for several years, explaining, "what harm is done to the patentee in the use of his right of invention, when the repair and replacement of a partial injury are confined to the machine which the purchaser has bought?" *Id.* at 123.

This principle underlies the application of the law. It was elaborated by the Court in *Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), where the patented combination was a fabric convertible top and the associated metal support structure. The Court explained that replacement of the worn fabric top constituted permissible repair of the patented combination, and could not be controlled by the patentee. The Court restated the principles that govern the inquiry as applied to replacement of unpatented parts of a patented article:

> The decisions of this Court require the conclusion that reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to "in fact make a new article," *United States v. Aluminum Co. of America,* [148 F.2d 416, 425 (2d Cir.1945) ], after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity, as, for example, in *American Cotton Tie Co. v. Simmons,* [106 U.S. 89, 1 S.Ct. 52 (1882) ]. Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property.

365 U.S. at 346, 81 S.Ct. 599.

This right of repair, provided that the activity does not "in fact make a new article," accompanies the article to succeeding owners. In *Wilbur–Ellis Co. v. Kuther,* 377 U.S. 422, 84 S.Ct. 1561, 12 L.Ed.2d 419, 141 USPQ 703 (1964), the Court dealt with the refurbishing of patented fish-canning machines by a purchaser of used machines. The Court held that the fairly extensive refurbishment by the new owner, including modification and resizing of six separate parts of the machine, although more than customary repair of spent or broken components, was more like repair then reconstruction, for it extended the useful life of the original machine. *See id.* at 425, 141 USPQ at 704–05 ("Petitioners in adapting the old machines to a related use were doing more than repair in the customary sense; but what they did was kin to repair for it bore on the useful capacity of the old combination, on which the royalty had been paid.")

Precedent has classified as repair the disassembly and cleaning of patented articles accompanied by replacement of unpatented parts that had become worn or

spent, in order to preserve the utility for which the article was originally intended. In *General Electric Co. v. United States,* 215 Ct.Cl. 636, 572 F.2d 745, 198 USPQ 65 (1978), the court held that the Navy's large scale "overhauling" of patented gun mounts, including disassembly into their component parts and replacement of parts that could not be repaired with parts from other gun mounts or new parts, was permissible repair of the original gun mounts. The court explained that the assembly-line method of reassembly, without regard to where each component had originated, was simply a matter of efficiency and economy, with the same effect as if each gun mount had been refurbished individually by disassembly and reassembly of its original components with replacement of a minor amount of worn elements. *Id.* at 780–86, 198 USPQ at 95–100.

Similarly, in *Dana Corp. v. American Precision Co.,* 827 F.2d 755, 3 USPQ2d 1852 (Fed.Cir.1987), the court held that the "rebuilding" of worn truck clutches, although done on a commercial scale, was permissible repair. The defendants in *Dana Corp.* acquired worn clutches that had been discarded by their original owners, disassembled them, cleaned and sorted the individual parts, replaced worn or defective parts with new or salvaged parts, and reassembled the clutches. Although the patentee stressed that some new parts were used and that the rebuilding was a large scale commercial operation, the activity was held to be repair. *Id.* at 759, 827 F.2d 755, 3 USPQ2d at 1855. The court also observed that in general the new parts were purchased from Dana, the original manufacturer of the patented clutches, and that repair of used clutches was contemplated by the patentee. The court rejected the argument that the complete disassembly and production-line reassembly of the clutches constituted a voluntary destruction followed by a "sec-

ond creation of the patented entity," invoking the phrase of *Aro Manufacturing,* 365 U.S. at 346, 81 S.Ct. 599.

"Reconstruction," precedent shows, requires a more extensive rebuilding of the patented entity than is exemplified in *Aro Manufacturing, Wilbur–Ellis, General Electric,* and *Dana Corp. See also, e.g., Bottom Line Mgmt., Inc. v. Pan Man, Inc.,* 228 F.3d 1352, 56 USPQ2d 1316 (Fed. Cir.2000) (repair of cooking device by reapplying non-stick coating); *Hewlett–Packard Co. v. Repeat–O–Type Stencil Mfg. Corp.,* 123 F.3d 1445, 43 USPQ2d 1650 (Fed.Cir.1997) (modifying unused printer cartridges akin to repair); *Kendall Co. v. Progressive Med. Tech., Inc.,* 85 F.3d 1570, 38 USPQ2d 1917 (Fed.Cir.1996) (replacement of used pressure sleeve in medical device is repair); *Sage Prods., Inc. v. Devon Indus., Inc.,* 45 F.3d 1575, 33 USPQ2d 1765 (Fed.Cir.1995) (replacement of inner container for medical waste is repair); *FMC Corp. v. Up–Right, Inc.,* 21 F.3d 1073, 30 USPQ2d 1361 (Fed.Cir.1994) (replacing worn unpatented picking heads of harvester is repair); *Everpure, Inc. v. Cuno, Inc.,* 875 F.2d 300, 10 USPQ2d 1855 (Fed.Cir.1989) (replacement of entire cartridge containing spent filter is repair); *Porter v. Farmers Supply Serv., Inc.,* 790 F.2d 882, 229 USPQ 814 (Fed.Cir.1986) (replacement of disks in tomato harvester head is repair). In contrast, in *Sandvik Aktiebolag v. E.J. Co.,* 121 F.3d 669, 43 USPQ2d 1620 (Fed.Cir.1997), reconstruction was held to apply when a patented drill bit was "recreated" by construction of an entirely new cutting tip after the existing cutting tip could no longer be resharpened and reused. The court explained that it was not dispositive that the cutting tip was the "novel feature" of the invention, but that prohibited reconstruction occurred because a "new article" was made after the patented article, "viewed as a

whole, has become spent." *See also Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 8 USPQ2d 1983 (Fed.Cir.1988) (jury verdict of reconstruction for cutter wheels that were material part of patented invention).

■■■■ Underlying the repair/reconstruction dichotomy is the principle of exhaustion of the patent right. The unrestricted sale of a patented article, by or with the authority of the patentee, "exhausts" the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold. In *United States v. Masonite Corp.*, 316 U.S. 265, 278, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942), the Court explained that exhaustion of the patent right depends on "whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article." *See, e.g., Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568, 27 USPQ2d 1136, 1138 (Fed.Cir.1993) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent.") Thus when a patented device has been lawfully sold in the United States, subsequent purchasers inherit the same immunity under the doctrine of patent exhaustion. However, the prohibition that the product may not be the vehicle for a "second creation of the patented entity" continues to apply, for such re-creation exceeds the rights that accompanied the initial sale.

■■■■ Fuji states that some of the imported LFFP cameras originated and were sold only overseas, but are included in the refurbished importations by some of the respondents. The record supports this statement, which does not appear to be disputed. United States patent rights are not exhausted by products of foreign provenance. To invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent. *See Boesch v. Graff*, 133 U.S. 697, 701–703, 10 S.Ct. 378, 33 L.Ed. 787 (1890) (a lawful foreign purchase does not obviate the need for license from the United States patentee before importation into and sale in the United States). Our decision applies only to LFFPs for which the United States patent right has been exhausted by first sale in the United States. Imported LFFPs of solely foreign provenance are not immunized from infringement of United States patents by the nature of their refurbishment.

### Application of the Law

■■ In the Commission's Initial Determination the administrative judge, applying the four factors discussed in *Sandvik Aktiebolag*, 121 F.3d at 673, 43 USPQ2d at 1623, held that the remanufacturers had made a new LFFP after the useful life of the original LFFP had been spent. Thus, the ALJ ruled that the remanufacturers were engaged in prohibited reconstruction. The Commission adopted the ALJ's findings and conclusions that the remanufacturers were not simply repairing an article for which either the producer or the purchaser expected a longer useful life, pointing out that the purchaser discarded the camera after use. The Commission ruled that the respondents were not simply repairing the LFFP in order to achieve its intended life span, but created a new single use camera that would again be discarded by its purchaser after use.

Although the Commission's conclusion is supported by its reasoning and reflects concern for the public interest, for there was evidence of imperfections and failures of some refurbished cameras, precedent requires that these cameras be viewed as repaired, not reconstructed. In *Dana Corp.*, for example, the truck clutches had

lived their intended lives as originally produced, yet the court ruled that the "rebuilding" of the used clutches was more akin to repair than to reconstruction. The activities of disassembly and rebuilding of the gun mounts of *General Electric* were similarly extensive, yet were deemed to be repair. *Aro Manufacturing* and the other Supreme Court decisions which underlie precedent require that infringing reconstruction be a "second creation" of the patented article. Although the Commission deemed this requirement met by the "remanufactured" LFFPs, precedent places the acts of inserting new film and film container, resetting the film counter, and resealing the broken case—the principal steps performed by the remanufacturers—as more akin to repair.

The Court has cautioned against reliance on any specific set of "factors" in distinguishing permissible from prohibited activities, stating in *Aro Manufacturing* that "While there is language in some lower court opinions indicating that 'repair' or 'reconstruction' depends on a number of factors, it is significant that each of the three cases of this Court, cited for that proposition, holds that a license to use a patented combination includes the right 'to preserve its fitness for use ....'" 365 U.S. at 345, 81 S.Ct. 599. Indeed, this criterion is the common thread in precedent, requiring consideration of the remaining useful capacity of the article, and the nature and role of the replaced parts in achieving that useful capacity. The appellants stress that all of the original components of the LFFP except the film and battery have a useful remaining life, and are reused. The appellants state that but for the exposed roll of film and its container, any portion of the case that was broken by the photo processor, and the winding wheel in certain cameras, the refurbished LFFP is substantially the original camera,

for which the patent right has been exhausted.

 The Commission placed weight on Fuji's intention that the LFFP not be reused. The '087 patent specification states that

forming an opening in the film package makes it impossible to reuse the film package. Therefore, it will be impossible to refill a new film into the used film package in order to reclaim a film package for reuse.

'087 patent, col. 6, lines 14–18. However, the patentee's unilateral intent, without more, does not bar reuse of the patented article, or convert repair into reconstruction. *See Hewlett–Packard,* 123 F.3d at 1453, 43 USPQ2d at 1658 ("a seller's intent, unless embodied in an enforceable contract, does not create a limitation on the right of a purchaser to use, sell, or modify a patented product so long as a reconstruction of the patented combination is avoided").

Claim 7 of the '087 patent is representative of those claims that specifically recite the film container and unexposed film roll, elements that are replaced by the remanufacturers:

7. A lens-fitted photographic film package comprising:

a light-tight film casing which must be destroyed to open the same, having an opening through which an exposure is made;

a light-tight film container having a film winding spool therein disposed on one side of said opening in said light-tight film casing;

a rotatable spool disposed on the opposite side of said opening in said light-tight film casing from said light-tight film container;

one end of said spool being exposed outside said light-tight film casing;

a film roll of unexposed film of which one end is attached to said film winding spool in said light-tight film container and which is rolled around said rotatable spool.

The appellants state that the film and its removable container are commercial items, and that their replacement in a camera can not be deemed to be reconstruction. As discussed in *Aro Manufacturing*, the replacement of unpatented parts, having a shorter life than is available from the combination as a whole, is characteristic of repair, not reconstruction. On the totality of the circumstances, the changes made by the remanufacturers all relate to the replacement of the film, the LFFP otherwise remaining as originally sold.

■ Several of the Fuji patents in suit are directed to specific components of LFFPs, including the '495 (film path), '774 (film chambers and film path), '111 (pushbutton), '200 (shutter mechanism), '685 (recyclable LFFP body), and RE '168 (LFFP body) patents. For example, claim 1 of the '111 patent is directed to a LFFP having a pushbutton designed to avoid inadvertent activation during handling of the camera:

1. A lens-fitted photographic film unit containing a photographic film and being adapted to take photographs, comprising:

at least one plastic pushbutton formed integrally with a wall of said film unit, only a portion of said pushbutton being separated from said wall by a slit which surrounds most but not all of said pushbutton, said pushbutton being connected to said film unit by an integral bridge, said pushbutton being adapted to be depressed inwardly of the wall from an initial position and to move back outwardly to said initial position when released;

and a barrier formed on an outer surface of said wall surrounding said pushbutton only partially, said barrier projecting outwardly relative to an actuating surface of said pushbutton when said pushbutton is in said initial position, said barrier terminating in two ends disposed on opposite sides of said bridge.

The ruling of reconstruction as to these patents is incorrect, because the remanufacturing processes simply reuse the original components, such that there is no issue of replacing parts that were separately patented. If the claimed component is not replaced, but simply is reused, this component is neither repaired nor reconstructed.

### License

■ Fuji alternatively contends that the right to repair the patented cameras is impliedly limited by the circumstances of sale, pointing to the instructions and warnings printed on the covers of the LFFPs, and arguing that these constituted a license limited to a single use. *See Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709, 24 USPQ2d 1173, 1180 (Fed.Cir.1992) (the conditions of sale of a "single-use" medical device may contractually restrict further use). The administrative law judge found that:

A Fuji flash QuickSnap single use camera is in a box and each of the box and the outer cardboard cover of the camera has statements instructing the purchaser to not remove the film and return the camera to the photoprocessor and further cautioning the purchaser about the risk of electrical shock if opened by the purchaser.... [The packaging also] instructs the purchaser that the single use camera will not be returned to the purchaser after processing. Similar notations are on [other cameras].

Initial Determination at 141.

■ A license is governed by the laws of contract. *See McCoy v. Mitsuboshi*

*Cutlery, Inc.,* 67 F.3d 917, 920, 36 USPQ2d 1289, 1291 (Fed.Cir.1995) ("Whether express or implied, a license is a contract governed by ordinary principles of state contract law."). It was undisputed that no express conditions of sale, license terms or restrictions attended the sale of these cameras. There was no express contractual undertaking by the purchaser. The administrative judge observed that any issue of implied contract or license was mooted by the finding of infringement based on reconstruction, *see* Initial Determination at 165, and made no findings on the issues of contract or license.

■ Determinations of express or implied license or contract are matters of law. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687, 231 USPQ 474, 476 (Fed.Cir.1986). As stated in *Hewlett–Packard,* "A seller's intent, unless embodied in an enforceable contract, does not create a limitation on the right of a purchaser to use, sell, or modify a patented product as long as a reconstruction of the patented combination is avoided." 123 F.3d at 1453, 43 USPQ2d at 1658. We do not discern an enforceable restriction on the reuse of these cameras based on the package statements. These statements are instructions and warnings of risk, not mutual promises or a condition placed upon the sale. *See id.* at 1447–48, 1453, 123 F.3d 1445, 43 USPQ2d at 1652–53, 1657 (refusing implicit limit on modification of cartridges designed to be non-refillable and sold with instructions warning against reuse or refilling); *Kendall Co.,* 85 F.3d at 1576, 38 USPQ2d at 1922 (holding that instruction meant to ensure product safety and efficiency did not have contractual significance).

These package instructions are not in the form of a contractual agreement by the purchaser to limit reuse of the cameras. There was no showing of a "meeting of the minds" whereby the purchaser, and those obtaining the purchaser's discarded camera, may be deemed to have breached a contract or violated a license limited to a single use of the camera. *See Hercules, Inc. v. United States,* 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) ("An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.' ") (quoting *Baltimore & Ohio R.R. Co. v. United States,* 261 U.S. 592, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). We conclude that no license limitation may be implied from the circumstances of sale.

### The Process Patent

■ The '649 patent claims two methods for loading LFFPs with film and a film cartridge. In the method of claim 1, the film is wound from the cartridge onto a roll in a darkroom; both the film roll and the empty cartridge are then inserted into the LFFP and the casing is sealed. In the method of claim 9, a film cartridge is placed in the LFFP and the film leader is attached to a spool in the unexposed film chamber; the casing is then sealed, and an external apparatus winds the film into the unexposed film chamber. The administrative law judge found that the procedures of reloading film into the LFFP shells, in the overseas operations for which evidence was provided, infringed claims 1 and 9 of the '649 patent.

■ The defense of repair is applicable to process claims, as well as to apparatus claims, when the patented process was used in the United States and the patent right has been exhausted for the articles produced thereby. *Cf. Hewlett–Packard,* 123 F.3d at 1455, 43 USPQ2d at 1659 ("When a patentee sells a device without

condition, it parts with the right to enforce any patent that the parties might reasonably have contemplated would interfere with the use of the purchased device.") Thus when the same process was used, the patent right for that process was exhausted upon the LFFP's first sale in the United States. Again, however, for respondents who refused to provide evidence to show the methods they were practicing, we have no basis on which to reverse the Commission's judgment.

### Summary

 The Commission's ruling of reconstruction was based on the acknowledged general activities of the remanufacturers, and thus did not require evidence of whether any specific additional procedures were performed, for such evidence would not have affected the Commission's ruling. However, a ruling of repair can not be open-ended, for there is undoubtedly a stage at which permissible repair becomes prohibited reconstruction. We can not exculpate unknown processes from the charge of infringing reconstruction.[3] Thus our reversal of the Commission's decision does not apply to LFFPs from those remanufacturing facilities for which discovery was refused or where the evidence offered was found incomplete or not credible by the ALJ. For those respondents' activities that were shown to be limited to those steps considered by the ALJ, as set forth in the Initial Determination at 108–109, *see supra,* and affirmed by the Commission, we conclude that these activities constitute permissible repair. For those respondents who refused to provide discovery or access, or proffered incomplete or "bench" evidence (a partial display created for litigation purposes), or presented testimony that the ALJ found to be not credible or inadequate, it can not be determined from the record whether their remanufacturing activities are limited to those considered by the ALJ and on which our ruling of permissible repair is based. For those respondents, the record contains insufficient basis on which to reverse the Commission's rulings.

### Validity and Enforceability of the '649 Patent

 The only patent whose validity or enforceability was challenged is the '649 process patent. The appellants argue that a combination of the reference of Prontor–Werk with either the Voightlander or Kodak reference renders the '649 claims invalid on the ground of obviousness. These references had not been cited in prosecution of the '649 patent, but had been cited in the '400 patent in suit, and in another Fuji patent that is not in suit. The ALJ found that references containing the same teachings as the Prontor–Werk, Voightlander, and Kodak references were before the examiner of the '649 patent. Substantial evidence supports these findings.

The ALJ found that there was no suggestion in the prior art to combine these references to produce the '649 process. Thus the ALJ ruled, and the Commission agreed, that the combination of these references did not render obvious the claimed process. No error in this ruling has been demonstrated. The ruling that invalidity of the '649 patent was not shown is affirmed.

 The appellants also argue that the administrative law judge erred in not holding the '649 patent unenforceable for inequitable conduct, stating that the patentee

---

3. We take note that one of the original respondents admitted that it was building new LFFP cameras in China. These imported cameras were held to infringe, and are not part of this appeal.

should have cited these references to the examiner since they were cited in other patent applications. However, failure to cite cumulative references is not inequitable conduct. The ALJ found that the subject matter contained in these references was before the patent examiner in a cited Netherlands patent and Japanese publication. References cumulative to cited references do not raise issues of withholding of material prior art. *See Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1582, 18 USPQ2d 1001, 1014–15 (Fed.Cir.1991); *Specialty Composites v. Cabot Corp.,* 845 F.2d 981, 992, 6 USPQ2d 1601, 1609 (Fed.Cir.1988).

■ The administrative law judge found that the respondents had "provided no testimony that Fuji or its attorneys prosecuting the '649 application had any intent to deceive and the record is devoid of any such evidence." The appellants have not directed us to error in this finding. The simple absence of a reference from the prosecution record does not prove deceptive intent; there must be evidence sufficient to show, clearly and convincingly, the intent to withhold material information in order to deceive or mislead the examiner. *See Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir. 1988) (en banc) ("Inequitable conduct resides in failure to disclose material information ... with an intent to deceive....").

The findings on the issues of materiality and intent are supported by substantial evidence, and are affirmed. The Commission's ruling that inequitable conduct was not established is affirmed.

### Design Patents

■ The patented designs depict the exterior shape of the camera. Figure 1 from the D '750 design patent is illustrative:

FIG. 1

The exterior design is unaffected by the "remanufacturing" process; it remains in its original form in the outer box and plastic structure of the LFFP. The respondents do not dispute that their cameras have the same design as the original cameras; indeed, their argument is that their cameras are the original cameras, repaired for reuse.

■ For original cameras that have been permissibly repaired, the principle of exhaustion applies to the design patents as well as to the utility patents. The design patent right, like all patent rights, is exhausted by unrestricted first sale in the United States, and is not infringed by the importation and resale of the repaired articles in their original design. The judgment of infringement of the design patents is reversed, for those cameras for which the United States patent right was exhausted as discussed herein.

### CONCLUSION

The judgment of patent infringement is reversed with respect to LFFPs for which the patent right was exhausted by first sale in the United States, and that were permissibly repaired. Permissible repair is limited, as discussed herein, to the steps of removing the cardboard cover, cutting

open the casing, inserting new film and film container, resetting the film counter, resealing the casing, and placing the device in a new cardboard cover. Included in permissible repair is replacement of the battery in flash cameras and the winding wheel in the cameras that so require. For these products the Commission's orders are vacated.

LFFPs whose prior sale was not in the United States, or LFFPs remanufactured by procedures more extensive than those we hold to constitute repair, or whose remanufacturing procedures were withheld or insufficiently disclosed to the Commission, remain subject to the Commission's orders. For these products the Commission's orders are affirmed.

Any further proceedings in implementation of our decision shall be taken to the Commission. By motions recently filed, Fuji has asserted circumventions of the Commission's orders; this matter is appropriately considered by the Commission on remand. In addition, Dynatec states that it has sold its business, although no formal notice of substitution was provided. Our ruling applies only to the entities who have placed themselves before us.

This court's stay of the Commission's orders is lifted.

The parties shall bear their costs.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; STAY LIFTED.*