# United States Court of Appeals for the Federal Circuit

---

**FUJIFILM CORPORATION,**

*Plaintiff-Appellee,*

**v.**

**JACK C. BENUN,**

*Defendant-Appellant,*

**and**

**JAZZ PRODUCTS LLC, POLYTECH ENTERPRISES LTD,**
**and POLYTECH (SHENZHEN) CAMERA CO. LTD.,**

*Defendants-Appellants.*

---

2009-1487

---

Appeal from the United States District Court for the District of New Jersey in case no. 2:05-CV-1863, Judge Katharine S. Hayden.

---

Decided: May 27, 2010

---

LAWRENCE ROSENTHAL, Stroock & Stroock & Lavan LLP, of New York, New York, argued for plaintiff-appellee. With him on the brief were MATTHEW W. SIEGAL, and ANGIE M. HANKINS.

JOHN M. PETERSON, Neville Peterson LLP, of New York, New York, argued for defendants-appellants. With him on the brief were GEORGE W. THOMPSON, and MICHAEL T. CONE. Of counsel on the brief was JERRY P. WISKIN, Simons & Wiskin, of South Amboy, New Jersey.

---

Before MICHEL, *Chief Judge*, MAYER, and LINN, *Circuit Judges*.

PER CURIAM.


Jack C. Benun (Benun), Jazz Products LLC (Jazz), Polytech Enterprise Ltd. (PE) and Polytech (Shenzhen) Camera Co. (PC) (collectively, defendants) appeal the judgment of the United States District Court for the District of New Jersey finding that defendants infringed patents owned by Fujifilm Corporation (Fuji). *Fujifilm Corp. v. Benun*, No. 2:05cv1863 (D. N.J. July 22, 2009) (Final Order and Judgment). We affirm.

## BACKGROUND

This appeal concerns single-use cameras, or lens-fitted film packages (LFFPs). Fuji participates in the LFFP market and owns U.S. patents directed to LFFPs. Once a LFFP is used by a consumer it is taken to a film processor who opens the LFFP and processes the film. The film processor does not return the empty LFFP (shell) to the consumer. Jazz bought used LFFPs, refurbished them, and sold them as new.

This is the sixth appeal from decisions finding liability for infringing Fuji's LFFP patents by Benun and companies under his control. The case that is the subject of this appeal began in 2005 when Fuji sued Benun, Jazz, PE, and PC. Jazz is Benun's new company, initially formed as Ribi Tech Products LLC, after the Bankruptcy

Court for the District of New Jersey shut down Jazz Photo Corp. PE supplied Jazz with LFFPs that were refurbished by PE's subsidiary, PC. PC operated a factory in China where the LFFPs were refurbished. On April 4, 2005, Jazz purchased Jazz Photo Corp.'s inventory of about 1.4 million LFFPs made by PE and PC (collectively, Polytech), essentially continuing the LFFP business where Jazz Photo Corp. left off after being shut down by the bankruptcy court.

On June 6, 2005, the district court's first preliminary injunction enjoined the defendants from infringing and inducing others to infringe, and ordered Jazz to maintain an inventory of LFFPs until the parties reached a sampling agreement. On June 15, 2005, the district court's second preliminary injunction enjoined defendants from selling in or to the United States: LFFPs not made from shells first sold in the United States by Fuji or its licensees; and LFFPs not having a back cover that replaces the full back cover sold with the original LFFP. We affirmed the court's second injunction in *Fuji Photo Film Co., Ltd. v. Benun*, 463 F.3d 1252 (Fed. Cir. 2006).

The 1.4 million LFFPs Jazz purchased were detained due to International Trade Commission (ITC) orders prohibiting importation of LFFPs that infringe Fuji's patents. Based on the ITC orders, Jazz exported most of the detained LFFPs. From October 2005 to January 2006, however, PE sold almost a million of these previously detained LFFPs back to Jazz in the United States. These re-imported LFFPs were released by Customs based on an October 14, 2005, letter from defendants' counsel. Fuji discovered the re-importation in March 2006, while deposing Benun for this case.

On October 10, 2006, Fuji filed a contempt motion based on Jazz's re-importation. On December 5, 2006, the district court found defendants in contempt of the preliminary injunction based on clear and convincing evi-

dence that the re-imported LFFPs were infringing as determined by the sampling process. The court later awarded Fuji $117,486 in attorneys fees based on the contempt citation. Defendants' appeal to this court was dismissed for lack of jurisdiction. *Fuji Photo Film Co. v. Benun*, 240 Fed. App'x 862 (Fed. Cir. 2007).

In this case, Fuji moved for partial summary judgment of infringement on all but certain LFFPs made by refurbishing Achiever-brand LFFPs. Defendants moved for summary judgment that (1) Fuji had already recovered damages from the Jazz Photo Corp. bankruptcy, (2) this action was mooted by Fuji's settlement of bankruptcy claims against Jazz Photo Corp., (3) the bankruptcy sale of Jazz Photo Corp.'s inventory to Jazz was a patent exhausting first sale, and (4) the LFFPs were permissibly repaired. On June 30, 2008, the district court granted Fuji's motion for partial summary judgment of infringement, and denied defendants' motions.

On March 16, 2009, defendants moved *in limine* to bar reference to prior litigations and administrative actions, and to collaterally estop Fuji from litigating whether defendants had met the process requirement for permissible repair. On April 6, 2009, the court ordered each side to attend a pretrial conference that would include "a specific offer of proof as to each side." Defendants were tasked to show how they would prove less than 40% of Polytech's LFFPs made through December 13, 2003, were made from foreign shells, and consequently infringed Fuji's patents. Fuji was tasked to show how it would prove that defendants' LFFPs were reconstructed as opposed to permissibly repaired.

The court found both offers insufficient. Therefore, defendants were precluded from arguing that more than 60% of their LFFPs were refurbished from LFFP shells sold in the United States for the period prior to December

12, 2003. Fuji was similarly precluded from arguing reconstruction for the entire time period at issue.

A jury trial ensued. At the close of Fuji's case, defendants moved for judgment as a matter of law (JMOL) under Fed. R. Civ. P. 50(a) on Fuji's infringement claim based on defendants refurbishing Achiever-brand LFFPs. Defendants' JMOL motion, which contained no other issues, was denied. The jury found willful infringement of Fuji's patents and awarded a $2.00 per infringing LFFP running royalty, resulting in a verdict, including interest, of $16,191,406 against PE, of which Benun and Jazz are jointly and severally liable for $3,690,239; and an additional $2,500,000 lump sum royalty payment. The court denied defendants' post-trial motion for JMOL under Fed. R. Civ. P. 50(b) based on non-infringement by Achiever-brand LFFPs and inapplicability of a first sale's location, and its motion for a new trial on damages.

## DISCUSSION

For nonpatent issues we apply the law of the circuit in which the district court sits. *In re Cambridge Biotech*, 186 F.3d 1356, 1368 (Fed. Cir. 1999). In this case, Third Circuit law governs procedures for preserving issues for appeal and denial of motions for JMOL or a new trial. *Voda v. Cordis Corp.*, 536 F.3d 1311, 1318 (Fed. Cir. 2008). Under Third Circuit law we have plenary review over a district court's rulings on motions for JMOL, applying the same standards as the district court. *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 568 (3d Cir. 2002). We review for an abuse of discretion the district court's decision on whether to grant a new trial based on the verdict being against the weight of the evidence. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365-66 (3d Cir. 1999). In the Third Circuit, a district court has abused its discretion if its determinations are based on an erroneous view of the law or on a clearly erroneous assessment of

the evidence. *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).

For issues of substantive patent law and procedural issues pertinent to patent law, we apply our own law. *Cambridge Biotech*, 186 F.3d at 1368. Accordingly, we apply Federal Circuit law in reviewing, for an abuse of discretion, a district court's finding of contempt of an injunction by infringement. *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004).

## I.

Defendants present four issues for review: (1) whether *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. __, 128 S. Ct. 2109 (2008), eliminated the territoriality requirement for patent exhaustion announced in *Jazz Photo Corp. v. United States International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001) (*Quanta* argument); (2) whether the court invoked non-mutual collateral estoppel and precluded Polytech from presenting its permissible repair and first sale defenses on the basis of court proceedings to which Polytech was not a party (estoppel argument); (3) was a new trial on damages warranted by the jury's $2.00 per infringing LFFP running royalty and $2.5 million lump sum award (new trial argument); and (4) whether the court properly held defendants in contempt of a preliminary order enjoining importation of infringing LFFPs (contempt argument). First, we consider whether issues (1) and (2) are waived.

Regarding defendants' *Quanta* argument, defendants can only appeal issues presented to the jury that were included in an earlier motion for JMOL under Fed. R. Civ. P. 50(a), and properly renewed in a Fed. R. Civ. P. 50(b) post-trial motion. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172-73 (3d Cir. 1993). Fuji, however, did not raise a timely objection to Jazz's 50(b) motion arguments, including the *Quanta* argument, that were not present in

its 50(a) motion. *Chainey v. Street*, 523 F.3d 200, 218 (3d Cir. 2008). Fuji's argument that defendants waived their *Quanta* argument by consenting to the jury instructions fails for similar reasons. Accordingly, defendants' *Quanta* argument is properly before this court.

Defendants' estoppel argument was not raised in defendants' 50(a) or 50(b) motions, and their failure to raise the argument in either motion precluded Fuji's objection because it lacked notice that the argument was maintained beyond the pre-trial motions. Fuji timely asserts waiver, and defendants' estoppel argument is waived.

## II.

*Quanta Computer, Inc. v. LG Electronics, Inc.* did not eliminate the first sale rule's territoriality requirement. Three LG patents, relating to systems in which a microprocessor writes or reads memory unit data, were at issue in *Quanta*. LG licensed Intel to make, use, or sell combination products practicing these patents, but restricted Intel from passing a license on to Intel customers to make the patented combination by joining Intel's unpatented chips with components from a non-Intel source. *Quanta Computer, Inc.*, 553 U.S. at __, 128 S. Ct. at 2114. The license also stated that patent exhaustion applied when Intel sold its LG-licensed products. *Id.* In a second agreement, Intel agreed to provide written notice to its customers that Intel's LG license did not extend to any subsequent purchaser's product made by combining an Intel product with any non-Intel product. *Id.*

Intel sold chips to Quanta without hardware to connect them in a working computer; it also provided Quanta with the required written notice. *Id.* LG's patents were not infringed until the chips were assembled with hardware, but the only reasonable and intended use for the chips was practicing LG's patents. *Id.* at 2119. Quanta combined Intel's chips with non-Intel hardware so that

LG's patents were practiced. *Id.* The Supreme Court resolved whether Intel selling chips to Quanta exhausted LG's patent rights in the chip-using system. *Id.* at 2122. Holding the case governed by *United States v. Univis Lens Co.*, 316 U.S. 241 (1942) (exhaustion occurs when the only reasonable and intended use of the products sold is to complete the patented combination), the Court found that Intel's chips substantially embodied the patented invention and their unconditional, authorized sale by Intel thereby exhausted LG's patents. *Quanta Computer, Inc.*, 553 U.S. at __, 128 S. Ct. at 2122.

Defendants assert that *Quanta* created a rule of "strict exhaustion," that the Court's failure to recite the territoriality requirement eliminated it. That case, however, did not involve foreign sales. Defendants rely on *Quanta's* footnote 6 because it contains the phrase "[w]hether outside the country."[*] This phrase, however, emphasizes that *Univis* required the product's only use be for practicing–not infringing–the patent; and a practicing use may be "outside the country," while an infringing use must occur in the country where the patent is enforceable. Read properly, the phrase defendants rely on supports, rather than undermines, the exhaustion doctrine's territoriality requirement.

---

[*] LGE suggests that the Intel Products would not infringe its patents if they were sold overseas, used as replacement parts, or engineered so that use with non-Intel products would disable their patented features. But *Univis* teaches that the question is whether the product is 'capable of use only in *practicing* the patent,' not whether those uses are infringing. Whether outside the country or functioning as replacement parts, the Intel Products would still be *practicing* the patent, even if not infringing it." *Quanta Computer, Inc.*, 553 U.S. at __, 128 S. Ct. at 2119 n.6 (citations omitted) (emphasis in original).

## III.

We also consider defendants' new trial argument that the $2.00 per infringing LFFP running royalty and the $2.5 million lump sum, are excessive, punitive, and unsupported by substantial evidence. Under 35 U.S.C. § 284, Fuji was entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." To determine a reasonable royalty, a jury must find the royalty that would have been agreed to in a hypothetical negotiation between a willing licensee and willing licensors at the time infringement began. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*). The jury's award should stand unless it is grossly excessive, not supported by evidence, or based on only speculation or guesswork. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996).

Fuji presented testimony that in a hypothetical negotiation it would have enjoyed a strong bargaining position based on (1) defendants' entire business depending on a Fuji license; (2) Customs excluding infringing LFFPs; and (3) defendants' demonstrated inability to segregate infringing LFFPs from non-infringing LFFPs. Relying on these and other factors from *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), Fuji's expert testified that the parties would have agreed to a 40 cent royalty rate. Based on defendants' inability to separate the LFFPs, the expert testified at length about *Georgia-Pacific* factor 6 (collateral sales) and included both infringing and non-infringing LFFPs in the royalty base. In support of its all-product royalty base, Fuji presented the method as an accepted technique to avoid repeated disputes over what percentage of LFFPs infringe, a point of contention between Fuji and defendants.

Critically, Fuji's expert testified that in a hypothetical negotiation the royalty rate would have changed inversely to royalty-base changes, resulting in a consistent royalty amount. Specifically, if 50% of LFFPs infringed, and the royalty base only included infringing LFFPs (a reduction by one-half in the size of the potential royalty base of all LFFPs), then the royalty rate would double from 40 cents to 80 cents per infringing LFFP. In short, Fuji advocated a consistent royalty amount that would not vary with changes in the royalty-base size. To that end, Fuji's expert provided the jury with sufficient information to reach Fuji's proposed royalty amount, whether the royalty base included all LFFPs (a larger royalty base, driving the royalty rate down to reach Fuji's proposed royalty amount), or only infringing LFFPs (a smaller royalty base, driving the royalty rate up to reach Fuji's proposed royalty amount). By increasing the royalty rate in an amount proportionate to any reduction in the size of the royalty base, the jury could have reached a $2.21 royalty rate for application to a royalty base including only infringing LFFPs.** $2.21 is even larger than the $2.00 per infringing LFFP royalty the jury awarded.

Defendants seize on the 40 cent royalty rate and argue that the royalty base for the proposed royalty rate can only include infringing LFFPs, thereby making the jury's $2.00 royalty rate excessive. This argument fails because the jury was entitled to rely on evidence of bundling and convoyed sales in determining the proper scope of the royalty base. *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1559 (Fed. Cir. 1983). "The fact that bundling and convoyed sales affected [Fuji's] estimate of both the royalty base and the royalty rate is thus not a sufficient reason to nullify the jury's award." *Interactive Pictures v. Infinite Pictures*, 274 F.3d 1371, 1385 (Fed. Cir. 2001).

---

** 0.40 per LFFP ÷ (4,600,000 LFFPs ÷ 25,400,000 LFFPs)) = $2.21

Because defendants apply similar logic in their assertion that the $2.5 million lump sum is excessive, these arguments also are unconvincing.

## IV.

Finally, defendants challenge whether the court properly held them in contempt of a preliminary order enjoining importation of infringing LFFPs. They do not dispute the existence of a valid court order, or their knowledge of that order. Instead, they argue that contempt was not supported by sufficient evidence of infringement, the imported cameras were redesigned, and Fuji's patent rights were terminated during the bankruptcy sale. We need not reach defendants' third argument; it was waived by their failure to raise it in either the 50(a) or 50(b) motion.

Defendants' remaining arguments are unconvincing. The district court correctly relied on three fact witness reports and a statistical expert to show that imported LFFPs included shells that were not first sold in the United States, and not redesigned. Therefore, the court did not abuse its discretion in finding contempt of the preliminary injunction.

## CONCLUSION

Accordingly, the judgment of the United States District Court for the District of New Jersey is affirmed.

## **AFFIRMED**